# GEORGE A. BRADFORD

*v.*

# EDWARD ABEND.

1.. DIVORCE—*on bill filed by insane person, invalid.* Where a bill is filed in the name of an insane wife, against her husband, for a divorce, while she is in close confinement in another State, beyond the jurisdiction of our courts, it matters not who advised the filing of the bill, she can give no consent to the proceedings, and everything done in her name, and the decree of divorce, will be invalid, and may be set aside on bill filed by her conservator. Whether there is fraud, in fact, or not, the law will presume fraud, from the unequal position of the parties, and that will vitiate the decree.

2. EQUITY—*will protect persons bereft of reason.* Where a party is unable, in consequence of mental weakness, to protect himself, equity will lend its aid, that no injustice may be done. It will protect such party against his own acts, as well as those of others done in his name.

APPEAL from the Circuit Court of Jefferson county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

This was a bill in chancery, filed by Edward Abend, as the conservator of Ann Bradford, against George A. Bradford, to set aside a decree of divorce rendered on a bill in the name of Ann M. Bradford, against George A. Bradford, in the St. Clair circuit court, at the September term, 1858, and for an order for the defendant to contribute to the support of his insane wife.

The final decree of the court found the decree of divorce was fraudulent, and void *ab initio,* and set the same aside at the costs of the defendant, who appealed from the decree to this court.

Mr. J. M. HAMILL, for the appellant.

Mr. G. A. KŒRNER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

In 1835, Ann M. Bradford, then of sound mind, was married to George A. Bradford, and lived many years with him

as his wife.   Among the principal allegations of the present bill are, that in 1853, on account of sickness, both mental and physical, superinduced by cruelty and neglect on the part of her husband, she became insane, and has ever since so remained; and having been abandoned by her husband, she was by her friends placed in a hospital for the insane in St. Louis, for care and treatment; that afterwards, on the 20th of September, 1858, while she was so confined in the asylum, and wholly incapable of comprehending any business, as the charge is, a bill was filed for divorce, in the name of the insane wife, in the circuit court of St. Clair county, against her husband, on the ground of desertion, and, without waiting to have process issued and served upon him, defendant, on the same day, caused his appearance to be entered, and having answered the bill, and there being no replication, the cause was at once heard, and a decree of divorce rendered.

The bill also contains an allegation the divorce was obtained by fraud on the part of defendant to rid himself of his wife, on account of the misfortunes that had overtaken her.   The facts relied upon as showing the collusion and fraud insisted upon are, that the bill was filed in the name of the wife when she was insane and confined in an asylum in another State, incapacitated, on account of her mental condition, to comprehend such proceedings, had they been communicated to her; and that, on the same day, perhaps as a part of the same transaction, although defendant himself then resided out of this State, his appearance was entered, his answer filed, the cause heard and a decree of divorce pronounced.

Without commenting on that branch of the case, as it appears all persons alleged to have been most active in the matter have since deceased, the decision may be placed on the single ground, the wife was insane when the bill was filed, and incapable, by reason of her affliction, to give any consent to the filing of the bill, and that this fact was well known to defendant.   That she was insane at the time, and was confined in an asylum for the insane in another State on the very day

the proceedings in divorce were had in the courts of this State, admits of no doubt. The testimony given by persons in charge of the asylum is so minute and circumstantial as to entitle it to entire confidence. The contradictory testimony, so far as there is any, comes from the memory of parties, unaided by contemporaneous records or other circumstances, and without imputing any wrong intention to witnesses, their memories, after the lapse of so many years, may be at fault. But with the witnesses who had charge of the institution at which Mrs. Bradford was being treated, there is much to fix their attention, so that it is hardly probable they can be mistaken as to the facts about which they testify. The fact she was transferred from the St. Louis hospital, which was a charitable institution for the reception of all afflicted persons, without reference to the character of sickness, to St. Vincent's Insane Asylum, an institution exclusively for insane persons, both curable and incurable, is a fact strongly corroborative of the direct testimony as to the fact of her insanity at that particular time. No more reliable testimony could be produced than that of the Sister then in charge of the institution. She describes Mrs. Bradford's mental and physical condition, at the time the divorce was granted, from facts within her own knowledge, obtained by personal observation. The account given shows she was not only infirm in body by reason of paralysis, but her mind was all gone, save occasional lucid intervals of brief duration. As the witness expresses it, "at times she would talk quite reasonably, but any one, to hear her talk alone, would consider her a raving maniac." The attending physician says, "her insanity was called chronic mania, attended with partial paralysis, and, perhaps, depending on the same cause that produced the paralysis." According to the physician's testimony, her lucid intervals were of short duration, and she was subject to "periodical attacks of great excitement." He gives it as his opinion that in September, 1858, she was not of "sound mind sufficient to transact business—she was insane."

Our conclusion is, the relief granted by the court below is warranted both by the law and the evidence. As we have seen, the bill was filed in the name of the insane wife against her husband for divorce, while she was in close confinement in another State, beyond the jurisdiction of our courts. It is a matter of no consequence who advised the filing of the bill, whether it was done by friends and relatives or other persons. Being insane, she could give no consent to the proceedings had in the divorce case, and hence everything that was done in her name was invalid. Consent involves an act of reason, and when one is bereft of reason it follows there can be no consent given that comes from reflection. It is said to be a rule of universal application, that where a party is unable, in consequence of mental weakness, to protect himself, equity will lend its aid that no injustice may be done. Whether there was any fraud in fact, the law will presume fraud from the unequal position of the parties in this case, and that will vitiate the decree.

Evidence in this record shows, beyond all dispute, that Mrs. Bradford was insane before she was sent to the St. Louis hospital for more humane care than could be given her among her friends, and this fact must have been known to her husband before he entered his appearance in the divorce case in which the decree was entered. It was known to other relatives, and we do not understand how it is possible defendant could have been ignorant of her mental condition.

Counsel suggest the question of insanity made could only be raised by plea in abatement in the original suit. It is apprehended no one could have interposed that plea but defendant himself, and that he failed to do. How could the insane woman, that was named as complainant, do it? Her mental condition was such she could not know a bill had been exhibited in her name, but if she had known it, how could she plead in abatement to her own bill? There is no evidence she had any knowledge a bill was pending in her name before decree was pronounced, and if the letters offered in evidence were

6—89 ILL.

written and comprehended by her, it is not probable she would have consented to the divorce, or any other arrangement that would have separated her from her husband and children. She was suffering under a delusion she had committed some great sin, that had alienated her husband's affection from her, and with great earnestness she implored his favor, which in her ravings she imagined would restore her to health and happiness again. Evidence was offered with a view to show there was some foundation for such insane belief; but we think her mental and physical condition at the time, as shown by the testimony, were such as to disprove all accusation of guilty conduct, no matter what inculpatory circumstances may have surrounded her.

The decree will be affirmed.

*Decree affirmed.*