B. G. McDOWELL, Guardian, v. N. O. MORRELL et al.

1. CHANCERY PRACTICE AND PLEADINGS. *Bill to set aside judicial proceedings for fraud. What must be alleged.* To sustain an original bill to set aside judicial proceedings for fraud, there must be an averment of such facts as, if found, would show a meditated and intentional contrivance by one or more of the litigants to keep the complainant and the court in ignorance of the real facts, whereby a wrong conclusion was reached, and positive injury done to the party complaining, without neglect or inattention on his part.

McDowell *v.* Morrell.

2. SAME. *Bill of review. Errors to be specifically pointed out.* To sustain a bill of review for errors of law apparent, the errors must, by proper recitals of the proceedings sought to be reviewed, be specifically pointed out, and only such errors can be noticed as are thus designated.

3. SAME. *Same. Mental incapacity.* If the mental incapacity of a party was considered and passed upon by the court in the proceedings sought to be reviewed, new matter which merely tends to establish the fact of incapacity, and might then have been procured by reasonable diligence, is not sufficient to sustain a bill of review.

4. SAME. *Same. Same.* Quere, whether if the mental capacity of a defendant in a chancery suit, who appears by attorney, was not considered, and the cause was proceeded with as if he were sane, his lunacy at that time would be such new matter as would sustain a bill of review after an inquisition of lunacy, and the appointment of a guardian?

FROM SULLIVAN.

Appeal from the Chancery Court at Blountville. H. C. SMITH, Ch.

W. D. HAYNES and M. L. BLACKLEY for complainants.

VANCE & WOODS and N. M. TAYLOR for defendants.

COOPER, J., delivered the opinion of the court.

The chancellor sustained a demurrer to the bill, and the complainant appealed.

It will simplify the case to state historically the facts as they may be gathered from the bill. In December, 1865, Toliver Bolin recovered a judgment before a justice of the peace against Russell Peters and John Peters for $142.80 and costs. In the same month, one Elizabeth Mahaffy recovered a similar judgment against the same parties for $141.65. On the

15th of January, 1866, John R. Dulaney recovered a similar judgment against John Peters for $12. These judgments were shortly afterwards assigned to the .defendant, N. O. Morrell. On the 20th of November, 1865, John Peters executed his note to N. O. Morrell, payable three months thereafter, for $150. In August, 1865, John Peters conveyed to his wife, Nancy Peters, a tract of land, his only property. In March, 1866, N. O. Morrell filed his original bill against John Peters and Nancy his wife, and others, attaching the land conveyed by Peters to his wife, and seeking to subject the land to the satisfaction of the judgments and notes described, upon the ground that the conveyance was intended to delay creditors. Such proceedings were had in the cause that, "on the — day of —— 186-," a decree was rendered in favor of Morrell setting aside the sale and ordering the land to be sold in satisfaction of the complainant's demands. "There have been." adds the bill, "various and numerous orders and decrees entered and made in said cause." The bill also shows that John Peters was represented in that suit by counsel "having charge of his case in said cause." In March, 1877, upon an inquisition of lunacy then had, John Peters was found by the jury to be a lunatic, and to have been so as far back as 1856, without sufficient mental capacity to manage his business, or. make binding contracts. In April, 1877, complainant, B. C. McDowell, was appointed guardian of the person and property of John Peters. The present bill was filed, February 8, 1878, by leave of the court in the previous cause, to set

aside the decrees therein for fraud, and to review those decrees for errors of law, and upon newly discovered testimony.

The allegations of the bill are that Mahaffy lost two horses, and Bolin one horse by raiders in the latter part of the late war; that they conspired with Morrell to charge Russell Peters, a son of John Peters, with having taken the horses, and threatened to have him arrested unless the father would pay for the horses; that the notes mentioned were executed accordingly, one of the notes being made payable to Morrell for his services; that Morrell had paid nothing for the other claims but is prosecuting them for the benefit of Mahaffy, Bolin and Dulaney; and that the suits before the justice were not defended.    The bill further alleges that at the dates of the execution of the notes, the recovery of judgments, the conveyance of his land to his wife, and the pendency of the chancery suit, John Peters was of unsound mind, incapable of contracting, and incompetent to defend suits, or to be of aid to counsel, to instruct them as to evidence, or in any way to protect his rights and interests.    It is further alleged that said Peters was so entirely void of understanding, that he had no knowledge of the commencement of, or pending the chancery suit of the fact that he was incompetent to transact business, or that he ever had been under the control of a guardian, or that there were numerous witnesses by whom his imbecility could be established, and all of which was unknown to the counsel having charge of his case in said cause, and which evidences

had not been discovered until said final decree, and until they were made known by an acquaintance of the parties.

To sustain an original bill to set aside judicial proceedings for fraud, there must be the averment of such facts as, if found, would show a meditated and intentional contrivance by one or more of the parties litigant to keep the complainant and the court in ignorance of the real facts touching the matters of litigation, whereby a wrong conclusion has been reached, and positive injury done to the rights of the person comp'aining. The fraud must occur in procuring the judgment, and consist, as a general rule, in something not known to the opposite party at the time, and for not knowing which he is not chargeable with neglect or inattention. 1 Sto. Eq. Jur., 252a. There must appear, it would seem, on the part of the person charged with the fraud, not the mere assertion of rights or their earnest prosecution, but a *mala mens,* an intentional and studied design, carried into action, to deceive and defraud. *Patch* v. *Ward,* L. R. 3 Ch. App., 203; *Smith* v. *Harrison,* 2 Heis., 230. It will not do, of course, merely to charge that the decree has been fraudulently obtained, for that would only be the allegation of a conclusion which the party himself is not permitted to draw. Nor will it do to allege facts that are merely in conflict with the conclusion reached in the judgment or decree, or tending to sustain the contention of the unsuccessful party. For this might be done in any case in which there was opposing testimony. Few contested cases could

escape a re-hearing upon an original bill in the nature of a bill of review, if such averments alone would suffice.

Tested by these rules, the present bill cannot be sustained as an original bill for fraud. Not a single fact is stated which tends to show that N. O. Morrell, the successful litigant in the previous suit, was guilty of intentional concealment of a material matter unknown to his adversary, or which might not have been ascertained by reasonable diligence. All that appears on the face of the bill is that Morrell was successful in a case where all the facts, now relied on, touching the character of the contracts and judgments therein sought to be impeached, were as well known as at the filing of this bill.

To sustain a bill of review for errors of law apparent, the errors must, by proper recitals of the procedings sought to be reviewed, be specifically pointed out, and only such errors can be noticed as are thus designated. *Burson* v. *Severson*, 12 Heis., 381.; *Livingston* v. *Noe*, 1 Lea, 62. Not a single error of law is pointed out in this bill, or in the argument submitted in support of the bill.

The new matter which will sustain a bill of review for newly discovered evidence must be such as was in existence at the rendition of the decree sought to be reviewed, but could not then have been had by the exercise of reasonable diligence. It must be controlling, not merely cumulative, and must be so stated as to enable the court to determine, upon demurrer, that the complainant was not guilty of negli-

gence in failing to discover and produce it. *Burson* v. *Dosser,* 1 Heis., 754.

If we consider the present bill as conceding, by fair implication, that the capacity of John Peters to make the contracts sought to be enforced by Morrell, and the conveyance of property sought to be set aside, was in issue in the previous litigation, then the new matter relied on is that Peters had been declared a lunatic prior to the war, which fact had recently been discovered; that it had also been recently ascertained who was his physician, and that the physician would testify to the total mental imbecility of Peters for twenty or twenty-five years; that it has also been discovered since the decrees that witnesses could be obtained from among the best men in the community, and those who have known Peters longest and most intimately, who will prove his mental imbecility. All of his evidence, it is obvious, is merely cumulative, and could easily have been obtained by reasonable diligence.

The whole case of the complainant, in this view, is narrowed down to the question whether the mere fact that John Peters was not represented by a committee or guardian in the previous proceedings, although represented by counsel, is sufficient to vitiate those proceedings, and sustain a bill of the re-litigation of the matter involved in that suit. The question is not, whether lunacy, like infancy, would be new matter to sustain a bill of review where the fact of lunacy did not appear or was not in issue in the suit sought to be reviewed; but whether, after the defense

McDowell *v.* Morrell.

of lunacy has been made unsuccessfully, a subsequent finding of lunacy by an inquest, and that the lunacy related back to a period antedating the litigation, and the contracts on which it was founded, is of itself sufficient new matter for a bill of review. Upon principle, it would clearly not be sufficient. For an inquision of lunacy is only *prima facie* evidence as against persons not actually parties. 1 Gr. Ev., sec. 556. And it cannot prevail over a chancery decree to the contrary on that very issue.

The bill does not state in so many words that the question of the sanity of John Peters was in issue in the chancery suit, and passed upon by the court in the decrees sought to be reviewed, neither does it aver the contrary. Either intentionally, or through inadvertence, the fact does not distinctly appear the one way or the other. If it was in issue and determined, then this bill does not contain sufficient matter to review it. If it was not in issue, and the cause was proceeded with as if he were entirely sane, then the question would be squarely raised whether the lunacy of a litigant defendant is such new matter as would be sufficient to sustain a bill of review. It would be easy to conceive of cases where the concealment of the fact by the successful litigant might amount to a fraud on the court, and where, on the other hand, the ignorance of all parties would bring the case within the rule as to new matter. It would, however, be clearly incumbent upon the party seeking to review the procedings to state facts which would enable the court to see that the case fell within

one or the other category. No such case appears in this bill. The complainant's ward has been a resident of the county all the time, as the proceedings in the inquisition of lunacy, made an exhibit to the bill, shows. If he managed, or went through a long chancery suit, under such circumstances as to induce his own counsel, as well as the opposite party, to consider him as sane, some explanation of the extraordinary fact, if in reality he was insane, ought to have been given. There ought to be no uncertainty, and no unreasonable demand on the credulity of the court, where judicial decrees are sought to be reviewed after a litigation of ten years. " By a concurrence of judicial authority, lunatics are held to be within the jurisdiction of the courts, and have capacity to appear by attorney." Freem. on Judgments, sec. 152; *Rankin* v. *Warner*, 2 Lea, 302. The reason for the rule is, perhaps, that the vagaries of human intellect are so great, and the gradations by which mental capacity shades off into incapacity so infinite and delicate, that it would be unsafe, for the general welfare of the community, to subject judicial proceedings to the test of subsequent parol proof as to the state of the litigant's mind. The same reason has led the courts to treat the contracts of lunatics generally as voidable, and not void. Bish. Con., secs. 159, 291; Benj. on Sales, sec. 29; *Steifel* v. *Clark,* 9 Baxt., 466.

Without authoritatively deciding this last point, it is sufficient to say that the bill, upon a fair construction, implies that the question of the capacity of the complainant Peters was in issue in the original suit,

and does not contain a sufficient averment of facts to sustain a review of the decrees in that case. We are the better satisfied with this conclusion, because the record of the cause shows that the capacity of Peters to contract was raised by the testimony and considered by the court. The chancellor's decree declared that he was competent, and his decree was affirmed on appeal. And the previous inquisition of lunacy, upon which so much stress is now laid, was brought to the attention of the court by two witnesses, one of whom was present when it was held.

The result is that the decree of the court below sustaining the demurrer must be affirmed with costs.