Adelaide Turner, Guardian of Lyda Louise Bell, a non compos mentis, v. Theron O. Bell *et al.*

(*Jackson,* April Term, 1954.)

Opinion filed March 11, 1955.

Petition for Rehearing denied May 6, 1955.

MATTHEWS, WALSH & THOMPSON, of Memphis, for plain-
tiff in error.

ALBERT G. RILEY and HOWARD W. PRITCHARD, both of Memphis, for defendants in error Theron Bell and Brooks and Anna Mae Monaghan.

THOMAS R. PRICE and CANADA, RUSSELL, TURNER & ALEXANDER, all of Memphis, for defendants in error R. G. Gill, Trustee, and Provident Mut. Life Ins. Co. of Philadelphia.

MR. SPECIAL JUSTICE GRANVILLE S. RIDLEY delivered the opinion of the Court.

As the plaintiff in error in this Court and the complainant below, and the defendants in error in this Court and the defendants below are the same, in this opinion they will be referred to as plaintiff and defendants.

On September 15, 1953, Adelaide Turner, guardian of Lyda Louise Bell, filed her original bill in the Chancery Court of. Shelby County, Tennessee, against the defendants, Theron O. Bell, R. G. Gill, Trustee, Provident Mutual Life Insurance Company of Philadelphia, Carl A. Robinson, Trustee, Brooks V. Monaghan, and wife Anna Mae Monaghan, seeking to have declared void ab initio a decree of divorce granted to Lyda Louise Bell from C. A. Bell, deceased, on July 8, 1933, by the Circuit Court of Shelby County, Tennessee, to have the marriage ceremony between C. A. Bell and the defendant, Theron O. Bell, on August 18, 1935, declared void ipso facto, to have decreed to plaintiff's ward homestead and dower in an undivided one-half interest in certain properties, and seeking to have such homestead and dower rights declared paramount to those rights acquired by the other defendants by reason of certain deeds and mortgages executed by the said C. A. Bell, deceased, and the defendant, Theron O. Bell.

All of the defendants demurred to this original bill and therefore, of course, the facts under a reasonable construction thereof as alleged in the bill and the exhibits thereto for the purposes of this cause are true. Those facts necessary to an adjudication of this cause are as follows:

On or about November 8, 1911, Lyda Louise Bell, the plaintiff's ward and C. A. Bell were married in Memphis, Tennessee, and lived there as husband and wife until November 6, 1931, when Lyda Louise Bell was adjudged insane and ordered committed to Western State Hospital by order of the County Court of Shelby County, Tennessee, in proceedings under Chapter 17 of the Public Acts of 1919. At that time under this proceeding no

guardian was appointed. She apparently remained in Western State Hospital at Bolivar for a brief period of time after which she returned to Memphis and resumed and continued the marital relations with C. A. Bell until July, 1932.

On June 26, 1933, C. A. Bell filed suit for divorce against Lyda Louise Bell in the Circuit Court of Shelby County under which process issued and personal service was had. On July 8, 1933, the said Lyda Louise Bell in her own name filed an answer and cross-bill which was signed by two reputable firms as her solicitors and which was signed and sworn to by her on July 7, 1933, strictly in accordance with the oath prescribed by statute. Process issued under this cross-bill and was served on the cross-defendant, C. A. Bell, who filed an answer thereto on July 13, 1933, denying all material allegations thereof. On July 8th a motion for alimony and attorney's fees pendente lite had been heard and overruled by the Court. This cross-bill of Lyda Louise Bell sought process, a divorce from bed and board, alimony and attorney's fees permanent and pendente lite, and general relief.

The case of C. A. Bell against Lyda Louise Bell was heard in the Circuit Court of Shelby County, Tennessee, on November 8, 1933. It appears from the decree itself that both the plaintiff and the defendant in said cause were represented at said hearing by competent counsel, that both the plaintiff and the defendant testified, and that C. A. Bell introduced two other witnesses and Lyda Louise Bell three others. It decrees an absolute divorce to Lyda Louise Bell under her cross-bill, attorney's fees and alimony. In enforcing this decree for alimony it was necessary to file a petition against the said C. A. Bell for contempt. This petition was sworn to in person by Lyda

Louise Bell on April 19, 1934, and was filed on April 20, 1934. On May 28, 1934, a hearing was had under this contempt petition and upon C. A. Bell'c complying with the original decree of the Court he was purged of the contempt and the petition was dismissed by consent.

Under this state of facts the plaintiff contends that the divorce decree granted to Lyda Louise Bell on November 8, 1933, is void for (1) fraud, (2) lack of jurisdiction in the Circuit Court of Shelby County. The defendants contend (1) that said decree is valid, (2) if not valid is merely voidable and (3) if voidable this is a collateral attack thereupon and that a collateral attack will not lie upon a voidable decree.

The fraud relied upon by the plaintiff is alleged in her original bill in the following language, to-wit:

"That on the 26th day of June, 1933, and subsequent to the said Lyda Louise Bell being adjudged insane, the said C. A. Bell filed a bill for divorce, case No. 32968, R. D. in the Circuit Court of Shelby County, Tennessee, against the said Lyda Louise. Bell, who at the time, was a non compos mentis, and fraudulently failed to disclose therein and disclosed said fact in his pleadings only when he answered the alleged cross-bill of complainant's ward, the fact that his wife had been previously adjudged insane; that no Guardian ad litem was appointed in said divorce case."

The fact of Lyda Louise Bell's mental condition was disclosed to the Court in this divorce proceeding by a cross-bill signed and sworn to by her containing the following language, to wit:

"That, in November 1932, after telling cross-defendant that he was taking her to a picture show, he

drove her to the Western State Hospital for the Insane at Bolivar, Tennessee, where, against her will, he had her confined for a period of several months.

"That, after her release from that institution, where she was unjustly detained, she was allowed to return to the home of the parties, whereupon cross defendant told her that if she ever said anything to him or about him, or otherwise interfered with his personal affairs, he would have her confined again."

Plaintiff's answer to this cross-bill contains the following language:

"he denies that he did anything wrong in committing her to the State Hospital at Bolivar, as said commitment was according to law and under the authority of the County Court Chairman, and under the advice of eminent physicians. He further denies that she was unjustly detained in said institution."

Under these circumstances it is clear that, even if defendant attempted to practice a fraud upon the Court by concealment of a necessary fact in his original bill, such fraud was not successful. All necessary facts were disclosed to the Court by the pleadings themselves. The divorce was not granted to the plaintiff under his original bill, it was granted to the cross complainant under her cross petition. Therefore there is no fraud, *McDowell v. Morrell,* 73 Tenn. 278.

C. A. Bell died intestate on May 27, 1953, seized and possessed of certain real property set out and described in the bill which was conveyed to him and his wife Theron O. Bell as tenants by the entirety subsequent to August 18, 1935, parts of which are now held by other defendants as their successors in title.

The original bill seeks (1) homestead and dower in real property; (2) a declaration that the marriage ceremony of C. A. Bell and Theron O. Bell is void; (3) the declaring secondary of certain deeds and mortgages in order to obtain paramount title to this homestead and dower.

In *Jordan v. Jordan,* 145 Tenn. 378, at page 454, 239 S. W. 423, at page 445, the difference between a direct attack and a collateral attack is clearly defined. In that case the Court said:

" 'If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it, such as a motion or other proceeding to vacate, annul, cancel or set aside a judgment, or any proceeding to review it in an appellate court, whether by appeal, error, or certiorari, or a bill of review, or, under some circumstances, an action to quiet title. On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon the judgment is collateral.' 23 Cyc. 1062.''

This is a collateral attack. *McCartney v. Gamble,* 184 Tenn. 234, 198 S. W. (2d) 552; *Jordan v. Jordan,* 145 Tenn. 378, 239 S. W. 423, 433; *Hawkins v. The Manhattan Savings Bank & Trust Co.,* 1947, opinion of Court of Appeals, Western Division, unreported, adopting an opinion by then Chancellor John E. Swepston; 31 Am. Jur., Judgments, Sec. 611 page 204.

The plaintiff admits that this is a collateral attack when in her reply brief she says:

"Both groups of appellees have raised in their

respective briefs the question of collateral attack which is nothing more than a straw-man, as big, shaggy and frightening as they could make it, but which has nothing more to do with this lawsuit than a vegetable garden scarecrow.''

The single object of the suit at bar is to obtain for Lyda Louise Bell homestead and dower in the real property of C. A. Bell, deceased, although in order to do this it is necessary to declare void the divorce decree, the marriage with Theron O. Bell, and to have Lyda Louise Bell's claim to homestead and dower declared superior to the claims of those holding under C. A. Bell and Theron O. Bell as grantees and mortgagees.

Being a collateral attack it will only lie against a decree void ab initio.

''Void judgments and decrees being those that appear on the face of the record itself to have been rendered without jurisdiction of the parties or the subject matter, or without being justified by the pleadings or the consent of the parties, void judgments have no efficacy or probative force, and yield to collateral attack.'' Gibson's Suits in Chancery 4th Edition, Sec. 446, p. 387.

A collateral attack will not lie against a decree valid on the face of the record or voidable only for fraud, accident, mistake or for some other defect. *McCartney* v. *Gamble,* 184 Tenn. 243, 198 S. W. (2d) 552; *Magevney* v. *Karsch,* 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343; Gibson's Suits in Chancery (4th Ed.) Sec. 446.

The plaintiff insists that the divorce decree of November 8, 1933, is void ab initio since Lyda Louise Bell was declared insane under Chapter 17 of the Public Acts of 1919, Code Sec. 4433 et seq., on the 6th day of November, 1931, and had never been restored in accordance with the

procedure provided in Chapter 102 of the Acts of 1921, Sections 9656 and 9659 of the Code; that therefore, she could not maintain an action for divorce in her own name as was done under her cross-bill; that the Court could not acquire jurisdiction of the cause of action or of her person, unless her cross-bill was sworn to by her strictly in the language of the statute and unless she had the mental capacity to possess the requisite personal volition to seek the divorce and the necessary mental capacity to take the oath, that having been adjudged incompetent she conclusively as a matter of law so remained and therefore could not possess this volition or this capacity.

The original bill including the exhibits thereto and the three demurrers of the various defendants were sufficient to raise this issue. In the case of *Jackson* v. *Van Dresser,* 188 Tenn. 384, 219 S. W. (2d) 896, 899 the Court did say:

"We are of the opinion that by reason of Chapter 102 of the Acts of 1921, being [Code] Sections 9656-9659, an adjudication of insanity is conclusive evidence, as a matter of law, of a continuation of that status until the person adjudged insane has subsequently been declared of sound mind by a decree entered pursuant to the provisions of those Code Sections, and that the Chancellor was, therefore, correct in declaring void the deed and deeds of trust in question."

But this statement must be considered with reference to the circumstances of the case before the Court. *Magevney* v. *Karsch,* 167 Tenn. 32, at page 40, 65 S. W. (2d) 562.

However, in the discussion leading up to this conclusion it seems to us that the Court was referring to con-

tracts of persons decreed of unsound mind under Chapter 17 of the Acts of 1919. In the discussion leading up to this conclusion the following quotations appear:

"Until the enactment in 1919 of the Insanity Law for State Hospitals, jurisdiction to declare persons of unsound mind and take control of their property was vested in the County Court by an enactment of 1797, Code Sections 9613-9621, and extended to Chancery Court by an Act of 1851, Code Sections 9622-9636. During all this period there was no statutory provision giving any Court jurisdiction to ascertain and judicially declare a restoration to sanity. Possibly, inherent authority to so declare was had, however, by the Court rendering the decree of insanity.

"As a result of the situation just stated, it seems to have been consistently held by our Courts until the enactment of Chapter 102 of the Acts of 1921, Code Sections 9656-9659, that an adjudication of insanity is only prima facie evidence of such status when there is called into question a contract made by a person subsequent to the decree adjudging such person a lunatic, *Thomasson* v. *Kercheval,* 29 Tenn. 322, 323, 324; *Haynes* v. *Swann,* 53 Tenn. 560, 587; *McDowell* v. *Morrell,* 73 Tenn. 278, 279, 285. * * *

"The annotator in 68 A. L. R. page 1314, after observing that there is a conflict of authority upon whether an adjudication of insanity is conclusive or prima facie evidence of subsequent incapacity to contract, * * *.

"In considering the legal effect of the 1921 Act, there is at once suggested the question as to why the law was enacted. The answer seems apparent. As reflected by numerous of our reported decisions, the

prima facie evidence rule existing at least until the enactment of the 1921 Act was productive of considerable litigation throughout the years and left disturbed and unsettled the quiet assurance of title to property which had beeen conveyed by persons previously adjudged insane and left doubt as to whether their contracts would be upheld. Such a situation was and is palpably undesirable. It is reasonable to conclude that the Act was enacted to eliminate that situation.''

This decision brought to an end a long period of uncertainty in regard to the contracts of persons once declared incompetent who were not later declared competent in any manner provided by statute. Therefore the holding in the case of *Jackson* v. *Van Dresser,* supra, is the law of this State and should remain so.

In other States the majority rule is definitely that a person once declared insane cannot sue for a divorce in the name of his guardian, or committee, or next friend. *Mohrmann* v. *Kob,* 291 N. Y. 181, 51 N. E. (2d) 921, 149 A. L. R. 1284; 70 A. L. R. 964-965, citing cases from many States; 17 Am. Jur., Divorce & Separation, Secs. 270, 272; *Hinkle* v. *Lovelace,* 204 Mo. 208, 102 S. W. 1015, 11 L. R. A., N. S., 730; *Mohler* v. *Shank's Estate,* 93 Iowa 273, 61 N. W. 981, 34 L. R. A. 161; 130 Am. St. Rep. p. 853.

In laying down the majority rule these authorities cite *Worthy* v. *Worthy,* 36 Ga. 45; *Bradford* v. *Abend,* 89 Ill. 78; *Mohler* v. *Shank's Estate,* 93 Iowa 273, 61 N. W. 981, 34 L. R. A. 161; *Birdzell* v. *Birdzell,* 33 Kan. 433, 6 P. 561; *Dillon* v. *Dillon,* Tex. Civ. App., 274 S. W. 217; *Johnson* v. *Johnson,* 294 Ky. 77, 170 S. W. (2d) 889; *Higginbotham* v. *Higginbotham,* Mo. App., 146 S. W. (2d) 856; *Mohrmann* v. *Kob,* 264 App. Div. 957, 37 N. Y. S. (2d) 440; and other cases.

The majority rule is based on two grounds, (1) lack of capacity to take the prescribed oath. *Johnson* v. *Johnson*, 294 Ky. 77, 170 S. W. (2d) 889; *Mohler* v. *Shank*, 93 Iowa 273, 61 N. W. 981, 34 L. R. A. 161; *Higginbotham* v. *Higginbotham*, 1940, Mo. App., 146 S. W. (2d) 856 and *State ex rel. Higginbotham* v. *Hughes*, 348 Mo. 1073, 156 S. W. (2d) 650; *Dillon* v. *Dillon*, Tex. Civ. App., 274 S. W. 217; *Stevens* v. *Stevens*, 266 Mich. 446, 254 N. W. 162; but this holding is dicta in the Michigan case as the adjudication of insanity was void.

(2) Lack of the requisite personal volition to seek a divorce. 130 Am. St. Rep. 842; *Stevens* v. *Stevens*, 266 Mich. 446, 254 N. W. 162; *Cowan* v. *Cowan*, 139 Mass. 377, 1 N. E. 152; *Dillon* v. *Dillon*, Tex. Civ. App., 274 S. W. 217; 17 Am. Jur. Divorce & Separation, Sec. 272 citing cases from Ga., Ill., Iowa, Kan. and Texas; *Woodruff* v. *Woodruff*, 215 N. C. 685, 3 S. E. (2d) 5.

The minority rule is also laid down in these authorities, citing *Cowan* v. *Cowan*, 139 Mass. 377, 1 N. E. 152; *Cohn* v. *Carlisle*, 310 Mass. 126, 37 N. E. (2d) 260; *Campbell* v. *Campbell*, 242 Ala. 141, 50 So. (2d) 401; *Hopson* v. *Hopson*, 257 Ala. 140, 57 So. (2d) 505.

In Massachusetts this minority rule is based on the statute of that State.

In Alabama this minority rule is based upon a statute of general application allowing suits for persons of unsound mind to be maintained by guardians or next friends, which the court construing with its divorce statute holds sufficient to allow the maintenance of a divorce suit by such guardian and next friend in behalf of the person adjudged incompetent.

There are also cited in support of this minority rule two English cases which it is unnecessary here to discuss.

In the New York case of *Mohrmann* v. *Kob*, supra, there is a strong dissenting opinion by Justice Thatcher concurred in by Justice Rippey. However, Justice Thatcher bases his dissent upon a statute of the State of New York. This case is discussed at length in *Mohrmann* v. *Kob*, 291 N. Y. 181, 51 N. E. (2d) 921, 149 A. L. R. 1284.

The decision of the case at bar requires a searching inquiry into these two reasons upon which the majority rule is based.

Chapter 17, Section 2 of the Pub. Acts of 1919, defines insanity as follows:

"Insane: By insane is meant any person who by reason of unsoundness of mind is incapable of managing his own estate, or is dangerous to himself or others; if permitted to go at large, or is in such condition of mind or body as to be a fit subject for care and treatment in a hospital or asylum for the insane. No person, idiot from birth, or whose mental development was arrested by disease or physical injury occurring prior to the age of puberty, and no person who is afflicted with simply epilepsy is regarded as insane, unless the manifestations of abnormal excitability, violence or homicidal or suicidal impulses are such as to render his confinement in a hospital or asylum for the insane a proper precaution."

The real purpose of an inquisition of lunacy is to secure the commitment of the alleged lunatic to an institution when it is not safe for such person to be at large or to obtain an appointment of a guardian of his person and/or of his property to preserve it from waste. *Reynolds* v. *Reynolds*, 181 Tenn. 206, at page 214, 180 S. W. (2d) 894. Is then a person declared incompetent under Chapter 17 of the Acts of 1919 conclusively presumed as a matter of

law to be incapable of possessing the requisite personal volition to seek a divorce, and to lack the capacity to take the required oath? As above stated, the majority rule answers this question in the affirmative. However, the States of Massachusetts and Alabama hold to the contrary. In Massachusetts it is held that a person of unsound mind may sue for divorce by his guardian or committee, but this is based upon a statute so providing. *Cowan* v. *Cowan*, 139 Mass. 377, 1 N. E. 152; *Cohn* v. *Carlisle*, 310 Mass. 126, 37 N. E. (2d) 260.

In Alabama it is held that person adjudged incompetent may maintain an action for divorce in the name of his guardian or next friend. The Alabama Court bases this opinion upon a general statute authorizing persons adjudged of unsound mind to sue in the name of a guardian or next friend construing this general statute in pari materia with its divorce statutes. *Campbell* v. *Campbell*, 242 Ala. 141, 5 So. (2d) 401; *Hopson* v. *Hopson*, 257 Ala. 140, 57 So. (2d) 505.

■ A divorce action is purely statutory and in order to give the Court jurisdiction the statute must be strictly complied with including the taking of the oath to a divorce bill in the language of the statute. *De Armond* v. *De Armond*, 92 Tenn. 40, 20 S. W. 422; *Carter* v. *Carter*, 28 *Tenn. App.* 478, 191 S. W. (2d) 451.

■ In those states denying to a person adjudged insane the right to sue by guardian or next friend, it can readily be seen that such guardian or next friend, in the absence of a statute authorizing him so to do, cannot take the necessary oath for his ward, only the ward can swear for himself. No person may swear in a representative capacity, an oath is personal.

In none of the cases denying to a person adjudged

insane the right to sue for a divorce because of lack of the requisite personal volition to seek the same is there any statute quoted such as Section 8445 of Williams Code of 1934, which is as follows:

"8445 4220 (2467). Relief by annulling marriage or decreeing separation or other decree.—But if the court be of the opinion that the complainant is entitled to relief, it may be granted, according to the prayer of the bill, by annulling the marriage, or by ordering a separation, perpetual or temporary, or such other decree as the nature and circumstances of the case require."

Under this statute it has been held and is now the law in Tennessee that an absolute divorce may be granted to a party seeking only a separation from bed and board and that an absolute divorce may be so granted over the active opposition of such party, *Lingner* v. *Lingner,* 165 Tenn. 525, 56 S. W. (2d) 749, 752. In this case, the Court speaking through Chief Justice Green said:

"In the case before us, however, the parties are mature. The chancellor, who had these people before him, together with their kinsfolk, has found that their mutual feelings have reached such a degree of hostility as to make a reconciliation impossible; that a limited divorce would only prolong a bad situation that society had no interest in preserving. We agree with the chancellor. This is not a doubtful case such as *Rutledge* v. *Rutledge,* supra [37 Tenn. 555, 5 Sneed 555], and those that follow it. The wishes of neither party in a divorce case control the actions of the court. The court, of course, gravely considers the desires of the party wronged, but the court reserves the right to determine for itself what is best

for that party. We can see no good that would accrue to either party herein by decreeing a limited divorce since no rapprochement can be expected.

"As pointed out by another court, we must take into consideration 'the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried.' *Burlage* v. *Burlage,* 65 Mich. 624, 32 N. W. 866, 867. Society is not interested in perpetuating a status out of which no good can come and from which harm may result.

"Upon the whole case, we think the first disposition of the matter made by the chancellor was proper; that an absolute divorce should be decreed to the wife. *Merritt* v. *Merritt,* supra [10 Tenn. App. 369], may be regarded as disapproved."

In every divorce action there is husband, wife and a third party who may be variously designated as the Public, Society, Civilization. At the counsel table, representing this third party sits the Court. Where there is a conflict between the interests of this third party and that of either of the others the interests of this third party are paramount and the Court will so hold. *Lingner* v. *Lingner,* supra.

Thus where the Court can supply the requisite personal volition for absolute divorce to a competent person seeking a divorce from bed and board only even over the opposition of such person, the Court can supply the requisite volition on behalf of a person adjudged incompetent.

There remains then the question of whether Lyda Louise Bell had the capacity to take the oath to her cross bill which was necessary in order to give the Court jurisdiction of the cause of action.

██ An insane person can sue and be sued in his own name if the defendant fails to object thereto. *Rankin* v. *Warner,* 70 Tenn. 302; *Cartwright* v. *Juvenile Court at Nashville,* 172 Tenn. 626, 628, 113 S. W. (2d) 754; Gibson's Suits in Chancery (4th Ed.) Sections 82, 105; 130 Am. St. Rep. p. 842 and the many cases cited hereunder upon the general rule.

██ Although a person has been declared insane this does not conclusively render such person incompetent as a witness. 70 C. J. 96, Witnesses, Sec. 123; 58 Am. Jur. p. 92, Sec. 118, p. 94, Witnesses, Sec. 121; Wigmore on Evidence, 3d Ed., Vol. II, Sec. 492, p. 583.

The general rule as laid down in 58 Am. Jur. p. 92, Sec. 118, is as follows:

"118. Generally—Owing to imperfect understanding of the nature of insanity, its many forms and varying effects, it was considered at common law that every insane person was wholly and absolutely non compos mentis and incompetent to testify. And the statement was broadly made in a number of American cases, most of which were decided in the first half of the nineteenth century, that insane persons and idiots were not competent witnesses. But in more recent times, the courts, keeping pace with the progress of science, have greatly relaxed the rigor of that rule and now agree that a lunatic or a person affected with insanity is competent as a witness if, at the time he is offered as a witness, he has sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue. Otherwise, he is not competent. In other words, a lunatic, from the condition of his mind, may not be a competent wit-

ness, but his incompetency on that ground, the same as want of capacity from infancy or other cause, must be determined by the court.''

This rule is not changed by the fact that such a person has been adjudged incompetent and confined in an institution for the insane. 58 Am. Jur. Sec. 121, p. 94.

In Wigmore on Evidence, 3d Ed., Vol. 2, page 585, in referring to this principle it is said:

"This broad, rational principle,—that the derangement or defect, in order to disqualify, must be such as substantially negatives trustworthiness upon the *specific subject of the testimony*. (Italicized in Wigmore)—is now practically everywhere accepted.''

The decree in the divorce case is valid upon its face in every respect. It shows that C. A. Bell testified in person and introduced two witnesses; it shows that Lyda Louise Bell testified in person and introduced three witnesses. It shows that both parties were represented by competent counsel, and that the cause was hard fought throughout.

█ The record as herein above quoted does show upon a reasonable construction that Lyda Louise Bell had been adjudged incompetent, but that she remained in the Western State Hospital for a very short period of time. The judge trying the divorce case had before him for consideration the appearance, conduct and manner of testifying of Lyda Louise Bell. He was aided in protecting her and her rights by competent counsel for her. It must be presumed that he reached the conclusion that she had the necessary capacity to testify and to take the oath in her cross bill. It must be further presumed that he found she had the requisite personal volition to seek a divorce or separation in accordance with the statutes providing for the same.

.No matter how great the mental derangement of a person may be that person has some volition. They sit or stand, they move or remain motionless; they eat certain things, and refuse to eat others, and according to the degree of disability make many choices and exercise many other acts of volition. The reasoning in many of the cases laying down the majority rule is that the injured party in a divorce action always had the right to forgive and forget, that because of religious belief such persons may not wish a divorce under any circumstances; that if an insane person is granted a divorce such person does not have the mental capacity to condone the acts of the offender. In reply to this it may be said that many persons entirely competent, who have the volition to obtain a divorce at the time it is obtained, at a later date sincerely regret the exercise of that volition and the obtaining of the divorce.

The fact that a person adjudged incompetent sues for divorce in his own name, when his adjudication of incompetency is disclosed to the court and no objection to his so maintaining the action is raised, does not render the divorce granted under these circumstances void ab initio.

The question of such person's possession of the requisite volition to seek a divorce is a fact to be found by the trial court just as is any other. The question of such person's possession of the capacity to take the required statutory oath is also a fact to be found by the trial court just as is any other.

In the case at bar these questions were before the court and in rendering the decree of divorce, it must be presumed that he found Lyda Louise Bell possessed of both the requisite personal volition to seek a divorce and the capacity to take the prescribed statutory oath.

In reaching this conclusion the social implications and the opportunities for fraud upon a trial court are realized.

However, to leave the findings of fact as to these two questions to the trial court is more in keeping with the realities of the many degrees of mental derangement which have become probably the greatest scourge of our fast moving civilization, than to conclude that the lack of such volition and capacity is conclusively presumed as a matter of law.

Let the decree of the Chancellor be affirmed and the costs of this appeal adjudged against the plaintiff-in-error and the surety on her bond.

### On Petition to Rehear.

In complainant in error's petition to rehear there is called in question the constitutionality of Section 8445 of Williams Code of 1934. This Section of the Code is as follows:

"8445 4220 (2467). Relief by annulling marriage or decreeing separation or other decree.—But if the court be of the opinion that the complainant is entitled to relief, it may be granted, according to the prayer of the bill, by annulling the marriage, or by ordering a separation, perpetual or temporary, or such other decree as the nature and circumstances of the case require."

The contention is made that it violates the 14th Amendment of the Constitution of the United States. This Amendment is as follows:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The clause relied upon is:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law".

Divorce is not a privilege or immunity of citizenship, either state or federal. *Ferry* v. *Spokane P. & S. R. Co.,* 258 U. S. 314, 42 S. Ct. 358, 66 L. Ed. 635, 20 A. L. R. 1326.

No person has a right to a divorce except as that right is granted by statute. When Lyda Louise Bell sought a limited divorce she availed herself of a privilege granted by the statutes of the State of Tennessee, and in accepting this privilege she did so subject to all of the restrictions and limitations placed around it by the Statutes of the State, one of which was Section 8445 of Williams' Code 1934, supra.

Complainant in error's argument amounts to insisting that Lyda Louise Bell had sufficient mentality to know that she did not want an absolute divorce; and that she had sufficient volition to seek provision for her support. If she had sufficient mentality to know that she did not want an absolute divorce, and sufficient volition to seek provision for her support, then she had sufficient mentality to take the oath to her cross bill, and sufficient volition to seek the divorce.

Complainant in error insists that the cross-defendant in the divorce case in the Circuit Court objected in his answer to the maintenance in her own name of the

divorce action by Lyda Louise Bell. This is not a correct interpretation of the answer. An examination of it discloses that the cross-complainant never questioned the right of Lyda Louise Bell to maintain such an action in her own name. This answer only objected to the Circuit Court granting her the relief of a divorce from bed and board.

The petition for rehearing is denied.