# M. DONALD HARRIS, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 457 S.W.2d 370.

Court of Criminal Appeals of Tennessee. Jan. 28, 1970.

Certiorari Denied by Supreme Court May 18, 1970.

66

Alvin Bell, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Edward E. Davis, Dist. Atty. Gen., John Jerry Foster, Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

HYDER, Judge.

M. Donald Harris was convicted of concealing stolen property valued at less than one hundred dollars, and of carrying a pistol with intent to go armed. He was sentenced to one year to five years in the penitentiary and to a fine of fifty dollars and eleven months and twenty nine days in the county workhouse, with the two sentences ordered to run consecutively. His appeal is properly before this Court.

We will review briefly what the testimony showed.

Mrs. Reba Fleming testified that the rear license plate on her automobile. as she said: "The black tag with the sticker, you know, the $18.50 sticker on it," disappeared off of her car on April 24, 1968. She said that it had been bolted on, that she saw it during the morning of that day, and that she did not go anywhere except to a movie that evening, after which she was stopped by the police and advised that the license was missing. On May 22, 1968, a Chattanooga City Detective, Mr. Pat Rowe, arrested the defendant outside of a car rental

agency in downtown Chattanooga, at which time the defendant had a paper bag which contained a loaded .38 caliber pistol, the license plate of Mrs. Fleming, a rubber mask, some men's clothing and a pair of sun glasses. The defendant was with Eula Mae Davis and Mr. and Mrs. Bobby Harden when he was arrested, and they had just left the car rental agency and were walking across the street when Officer Rowe stopped them.

Miss Eula Mae Davis testified that she had been living with the defendant for several days prior to the arrest, that he had gotten her out of jail in Georgia and brought her to Lakeshore Lodge where they lived together and ran around drinking and having a good time. She said that she had seen the pistol several days before the arrest when it was in the glove compartment of the car, but that she had not seen the license plate before the arrest. She testified that the defendant gave her the paper bag when he saw the officer and told her to say that it was hers. She said that she tried to give the bag back to the defendant, and she denied that it was hers.

The defendant took the witness stand in his own behalf. He denied that he had the paper bag which contained the stolen license plate and the pistol. He said that as they left the automobile rental agency Miss Davis had the paper bag, that she was so drunk that she was having difficulty in walking and standing, and that he took the bag to carry it for her. He did admit that he had gotten Miss Davis out of jail, where she was held on a bigamy charge, and that she did live with him for some period of time. He testified that he had admonished Miss Davis to stop drinking, that he shook her one time in an effort to get her to stop, and that he had told

her that he was going to take her "back to Linda, that's the girl she was living with down in Chickamauga, just as soon as I could." It was then, he said, that she told him that she was going to do everything she could to cause him as much trouble as possible. On cross examination the defendant testified about his lengthy criminal record for violation of the Federal Dyer Act and for robbery. He said that he didn't deny knowing anything about that license plate, but he did deny having it, he denied carrying it, and he denied stealing it. He said that the license plate was left in the car by a friend of Bobby Harden. He said that Miss Davis put the pistol in the paper sack, but he did not know anything about the men's clothes and the rubber mask.

The first two assignments of error challenge the sufficiency of the evidence. First it is contended that there was no evidence that the license plate had been stolen or that the defendant had any knowledge that it had been stolen, and hence there was no evidence to sustain the verdict of guilty of concealing stolen property. Second, it is contended that the evidence preponderates against the verdicts of guilty and in favor of the innocence of the defendant.

We believe that the evidence, though circumstantial, was sufficient to show that the license plate was stolen off of the automobile of Mrs. Reba Fleming. She said that it was bolted on, that she only drove to the movie the evening when it disappeared, that she did not drive over any rough roads, and that she had seen it on her car that morning. No other explanation of its disappearance is given except the suggestion by counsel for the defendant that it might have been shaken off on

rough roads, and we feel that Mrs. Fleming answered that contention to the satisfaction of the jury.

The defendant contends that there is not one scintilla of proof that he had knowledge of any theft of the license plate and that the jury verdict acquitting him of larceny and of receiving it with knowledge that it was stolen operated as an acquittal of the charge of concealing the plate with guilty knowledge.

It is true that there was no showing of how the defendant came into possession of the license plate, and there is no showing of where he got it. He did have it, concealed, in a paper bag with other articles which were suspicious. A license plate does not have the name of the owner on it, but it is an object of personal property which is identifiable and ownership is easily determined.

Defendant contends that there is no proof that his possession of the pistol was for the purpose of going armed. The loaded pistol was in the paper bag along with the other articles which we have mentioned. Certainly, if the defendant had the pistol for some lawful purpose, and not for the purpose of going armed, then there is no crime. But this is a question of fact, for the determination of the jury, and we believe that the verdict of guilt is founded upon sufficient evidence.

Circumstantial evidence may by itself be sufficient proof of the commission of a crime and sufficient proof on which to base a conviction. In such a case, and in an effort to guard against improper verdicts, all of the essential facts must be consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; the facts must exclude every other reason-

able theory or hypothesis except that of guilt; and the facts must establish such a certainty of guilt of the accused as to convince the minds of the jury, beyond a reasonable doubt, that the accused is the one who committed the offense. Smith v. State, 205 Tenn. 502, 327 S.W.2d 308. We think that the defendant has been shown to be guilty of both of the offenses under the applicable rule which we have stated.

■ ■ It is well established by numerous decisions of the Supreme Court of Tennessee, and of this Court, that a verdict of guilty, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State and establishes the State's theory of the case. Under such a verdict the presumption of innocence disappears, and upon appeal, that presumption of innocence is replaced by a presumption of guilt. This Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused. We may review the evidence only to determine whether it preponderates against the verdict, and the defendant on appeal has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Brown v. State, Tenn. Cr.App., 441 S.W.2d 485.

Certainly the defendant has not shown that the evidence preponderates against the verdict and in favor of his innocence.

■ The defendant, in his third assignment of error,

complains that these cases were forced to trial out of turn and that he should have been granted a continuance. In his brief he contends that the defendant was indicated on a charge of burglary, and that the burglary case was scheduled for trial on the date that the two instant cases were tried. He alleges that the failure to try the burglary case first denied him his constitutional right to have material witnesses present at his trial.

At the beginning of the trial of these two cases it was pointed out by counsel for the defendant that Bobby Harden was a co-defendant with M. Donald Harris in an indictment charging burglary. Apparently the burglary indictment was also scheduled for trial on the date that these cases were tried, and counsel stated that he desired to try the burglary case first in order that he could use Bobby Harden and his wife as witnesses for the defendant. No subpoena had been issued for the Hardens, and the defendant did not move for a continuance. We do not believe that the trial judge acted improperly or erroneously in putting the cases to trial under the facts as set out in this record.

Defendant complains in his fourth assignment that the court erred in refusing to suppress the testimony of Officer Rowe, and that it was error to allow the articles which he obtained upon the arrest of the defendant to be introduced into evidence.

Defendant objected strongly, during the trial, to his arrest and to the introduction of these articles into evidence since Officer Rowe did not have a warrant. The trial judge heard testimony on the subject in the absence of the jury. The defendant did not present any proof at

this hearing. The officer testified that checks had been stolen from the Black Angus Restaurant about three weeks before the defendant was arrested, and he had been informed that the defendant had cashed some of these checks at several places. He said that he had been informed that such a check had been cashed at the Red Food Store, on Hixson Place, and that they had gotten the license number of a car. When he checked on the car he found that it belonged to the rental agency and they had it registered to the defendant. It was just after the defendant returned the car that Officer Rowe arrested him. He said that one informant was Mr. McCollum, out on 23rd and Main Street. The officer testified that he saw the defendant give the paper bag to Miss Eula Mae Davis, and that Miss Davis had said that it was not hers, and, he said, "it was back and forth there." The officer also testified, in the absence of the jury, that there was a pistol found behind the seat of the car which was connected in a burglary.

The trial judge ruled, after this hearing, that the arrest was proper and that the evidence then seized was admissible. He did caution the officer to limit his testimony to the jury to the case on trial, and he admonished him to not tell about his information about other possible offenses. West v. State, 221 Tenn. 178, 425 S.W.2d 602. The evidence does not preponderate against the holding of the trial judge Lloyd v. State, Tenn., 440 S.W.2d 797.

Defendant's companion for several days or weeks prior to his arrest, Miss Eula Mae Davis, testified that she had been committed to a mental hospital or institution in Georgia in 1964, 1966 and 1968 for mental ill-

ness. She also testified that she had been in trouble for drinking, and other offenses. She said that she had been drinking quite heavily during the few days prior to the defendant's arrest. When she was offered as a witness for the State counsel for the defendant objected to her testifying on the ground that she was not competent. A lengthy hearing was conducted, out of the presence of the jury, and the question of her mental condition was explored in depth. The trial judge ruled that she could testify but that the defendant would be allowed to show the jury her entire mental history, as well as her criminal record, so that they would have all of the facts in determining her credibility.

The fifth assignment of error contends that the trial court erred in permitting Miss Davis to testify; and alleges that she was mentally incompetent and that she had never been restored to competency. Further, in his sixth assignment, defendant contends that she should not have been permitted to testify since her name was not listed on the indictment and she was not subpoenaed as a witness for the State.

■ Our Code provides that every person of sufficient capacity to understand the obligation of an oath is competent to be a witness. T.C.A. § 24-101. Our Supreme Court, in Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648, has said that the question of the competency of a witness is a matter for determination by the trial judge. The question of a person's possession of the capacity to take the required oath is a fact to be determined by the trial court. Turner v. Bell, 198 Tenn. 232, 279 S.W.2d 71.

■ The Code provides that the district attorney shall indorse on each indictment the names of witnesses he intends to be summoned in the cause. T.C.A. § 40-2406. Our Supreme Court, in McBee v. State, supra, stated that the purpose or reason for the rule is to make known to the defendant the names of such witnesses who will be called to testify so that the defendant will not be surprised and handicapped in the preparation of his case. At the time of the appearance of the witness now complained of as being a surprise to the defendant her testimony was objected to because she was alleged to be incompetent. No objection was raised then due to the fact that her name was not on the indictment. We do not believe that it can be successfully argued that her appearance as a witness was any surprise to the defendant. She had lived with him for several weeks prior to his arrest, and it was she that he blamed as having the paper bag. There is no merit to this assignment.

■ The last assignment of error complains that the argument of the State's counsel to the jury was inflammatory and prejudicial and deprived the defendant of a fair trial. In his brief there are cited a few sentences or paragraphs from the argument which is alleged to be prejudicial. While the defendant did not make any objection to the argument of the Assistant District Attorney General at the time, and under the rulings of our Supreme Court such issues cannot be considered on appeal, Turner v. State, 188 Tenn. 312, 219 S.W.2d 188; Rivera v. State, Tenn.Cr.App., 443 S.W.2d 675; we have, nevertheless, made a careful study of the argument complained of. The conduct complained of here could not have affected the verdict to the prejudice of

the defendant. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758.

Finding no error we affirm the judgment.

We express our appreciation to counsel appointed in this case for his able representation of the defendant.

WALKER P. J., and MITCHELL, J., concur.