**Mary H. HUSSEY, Plaintiff–Appellant,**

v.

**Donald W. JACKSON, Commissioner of Revenue For the State of Tennessee, Defendant–Appellee.**

Supreme Court of Tennessee, at Nashville.

Feb. 6, 1989.

John J. Archer, Thomas and Archer, Nashville, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. & Reporter H. Rowan Leathers, III, Charlette Chambers, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

HARBISON, Chief Judge.

The issue in this case is whether the intangible assets of the estate of Edith Martin, deceased, are subject to the Tennessee inheritance tax. The executrix of her estate insists that the decedent was domiciled in Florida, although she had lived in Tennessee for the last twelve years of her life, and that the only assets which Tennessee could properly tax upon her death were a small amount of tangible personal property situated in Nashville, Tennessee. The chancellor held that the principal assets of the estate were taxable in Tennessee, holding that the deceased was a resident of this state for tax purposes. The executrix has appealed.

The will of the decedent was executed in Nashville, Tennessee on April 6, 1974. All three witnesses were Nashville residents. At that time the deceased had been living in Nashville for about three years, since the summer of 1971. The will stated that she was a resident of Hollywood, Florida. Upon the death of the decedent, however,

she was buried in Tennessee, where her husband and parents were also buried, and her will was probated in Nashville, Davidson County, Tennessee. There is no showing that there has been any ancillary probate in the state of Florida. The sole beneficiary of the will is a niece of the decedent, who resides in Nashville.

Most of the facts in the case were stipulated. The deceased, Mrs. Edith G. Martin, was born October 22, 1904, in Nashville. She was educated in Tennessee, but during the 1920's she worked for a period of time in Florida. She returned to Nashville about 1930, but in 1938 she moved to Miami where she purchased a home in 1939 or 1940. She married Henry M. Martin in Florida on June 27, 1942. They resided in the home which she owned in Miami until Mr. Martin's health began to fail in 1967. At that time Mrs. Martin and her husband sold their Miami property and moved to a retirement community in Hollywood, Broward County, Florida, where they purchased another residence. Mr. Martin's health was poor at that time and it continued to deteriorate.

The closest relatives of Mrs. Martin were her sister and her niece, who resided in Nashville, Tennessee. Mrs. Martin conferred with them from time-to-time about the health of her husband, and on several occasions they urged her to return to Nashville so that they could help to care for him. In the summer of 1971, Mrs. Martin brought Mr. Martin to Nashville for treatment by a physician who was known to the parties. Mr. Martin's condition worsened, and he never attempted to return to Florida. It was at first thought he would not live very long, and Mrs. Martin retained their residence in Hollywood, Florida until some time in 1972 or 1973. Thereafter she sold that residence and never again owned any real estate in Florida.

Mr. and Mrs. Martin did not purchase any real estate in Tennessee, but they did stay in rented apartments during such time as he was able to be out of a hospital or nursing home. He died in Nashville, Tennessee on July 15, 1975. Thereafter Mrs. Martin continued to reside in a rented du-

plex or apartment, or in a retirement home known as Trevecca Towers, until her death on July 26, 1983.

Mrs. Martin had worked part time while her husband was still living. After his death, however, her own health deteriorated. She made periodic visits to Florida, especially during the winter seasons, and she went on several occasions to attend to business. As her health continued to deteriorate, however, it became impractical for her to fulfill her wish to return to Florida to live independently or permanently.

Mrs. Martin retained a Florida driver's license until the time of her death, but it showed a Nashville address as her place of residence. She also had a Tennessee driver's license, and the automobile which she owned at the time of her death was registered in Tennessee. She continued to maintain her place of voting in Florida, and was registered to vote by absentee ballot at the time of her death.

When Mrs. Martin died she had approximately $64,000 on deposit with banks situated in Florida. She had about $48,000 on deposit in Nashville banks. She owned about $218,000 worth of corporate stock and U.S. securities. The certificates evidencing these intangible assets were situated in Nashville, as were Mrs. Martin's automobile and household furnishings.

Mrs. Martin frequently stated to relatives and acquaintances that she wished to return to Florida to live, especially during the first few years after she moved to Tennessee in 1971. As stated, however, she never acquired any residence in Florida, either by purchase or by rental, after she sold the residence of the parties in Hollywood, Florida during 1972 or 1973.

There is no indication in the record that the taxing officials of Florida have attempted to tax the principal assets of Mrs. Martin's estate. The executrix, who was qualified in Tennessee, filed death tax returns in both states and has consistently taken the position that Mrs. Martin was domiciled in Florida for tax purposes at the time of her death. The Tennessee taxing

authorities have insisted that she was a resident of Tennessee for tax purposes.

After considering the stipulated facts and such additional testimony as the executrix adduced, the chancellor concluded that Mrs. Martin was a resident of Tennessee for purposes of the state's inheritance tax. While there is, of course, some evidence on both sides of the issue, in our opinion the evidence does not preponderate against the conclusion of the chancellor. Mrs. Martin had resided in Tennessee continuously from 1971 until her death over twelve years later. She was buried here, and her closest relatives were here. She undoubtedly did express a desire to return to Florida and had on several occasions expressed the wish that she could live there. Circumstances in her personal life, however, prevented her doing so. She had had no actual place of residence in that state for the last twelve years of her life. In the meanwhile, she had lived continuously in Tennessee, rented various places of residence here and had here the situs of most of her intangible assets.

In our opinion it is significant that the will of the testatrix was probated in Nashville, Davidson County, Tennessee. T.C.A. § 32–2–101 provides:

Wills shall be proved and recorded and letters testamentary granted in the probate court of the county where the testator had his usual residence at the time of his death, or, in case he had fixed places of residence in more than one county, in either or any of those counties.

In a number of cases it has been suggested that the Tennessee courts would not have original jurisdiction to probate the will of a person who was not domiciled in the state at the time of death. *See McCutchen v. Ochmig*, 60 Tenn. 390 (1872); *Svoboda v. Svoboda*, 61 Tenn.App. 444, 454 S.W.2d 722 (1969). If the testator was domiciled in Tennessee at the time of death, the will should be probated in this state pursuant to T.C.A. § 32–2–101, rather than under separate statutes governing the probate of foreign wills, and this is true even though a will was executed outside the State. *Bearman v. Camatsos*, 215

Tenn. 231, 385 S.W.2d 91 (1964). The provisions of T.C.A. § 32–2–101 have no application to the will of a non-resident. *Woodfin v. Union Planters Nat'l Bank & Trust Co.*, 174 Tenn. 367, 125 S.W.2d 487 (1939).

T.C.A. §§ 32–5–101—110 make provision for the probate in Tennessee of wills which have been duly proved, allowed and admitted to probate outside of the state. As previously stated, the letters testamentary in this case were issued in Davidson County, Tennessee. There is no evidence of any probate proceedings in Florida, either original or ancillary.

The taxing statute in the present case, T.C.A. § 67–8–303, makes a distinction between transfers from residents of the state and those from non-residents. In the latter case, the statutes provide that an inheritance tax is levied only upon real property of a non-resident which is situated within this state and upon tangible personal property which has an actual situs within the state. T.C.A. § 67–8–303(a)(2). It was under this provision that the executrix filed a Tennessee inheritance tax return, claiming that Tennessee could properly tax only the tangible personal property of the decedent which was situated in Nashville. T.C.A. § 67–8–303(a)(1) subjects to the Tennessee tax all assets of a resident with certain exceptions which are not material to this case. Specifically the intangible personal property of a resident is subject to the tax. The Commissioner insists that under this provision the inheritance tax was properly levied upon the intangible property of the decedent.

In our opinion the contention of the Commissioner, which was upheld by the chancellor, is supported by a preponderance of the evidence. Under the United States Constitution it is possible for more than one state to exercise its taxing power over the intangible property of a person having substantial assets in or contacts with each of those states. *See Curry v. McCanless*, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939). That case arose from Tennessee, and the decision of the Supreme Court of the United States modified the decision of this Court in *Nashville Trust Co. v. Stokes*,

174 Tenn. 1, 118 S.W.2d 228 (1938). Under the facts of that case it was held that both the States of Tennessee and Alabama could levy transfer taxes upon the property of a decedent who resided in Tennessee and was domiciled here when she died but whose intangible properties were held in trust with a Birmingham, Alabama bank.

While it is constitutionally possible for more than one state to levy a transfer tax upon intangibles of a deceased person, the Tennessee taxing scheme evidences an intent not to subject such property to double taxation. T.C.A. §§ 67–8–501—506 deal with the allocation or proration of death taxes where there is a dispute as to domicile. The provisions of this chapter, however, are applicable only where two or more states contend that each was the domicile of the decedent at the time of death and there has been no judicial determination of domicile for inheritance tax purposes in any of such states. Provisions are made for election among the states, and for the resolution of the issue either by agreement among the contending states or by arbitration.

There is no showing in this case that those statutes have been properly invoked or that they are applicable. The record shows that the taxing officials of Florida have indicated that they will leave the resolution of the matter of domicile to Tennessee and its taxing officials.

■ The executrix correctly points out that the term "resident" is used in the statutes subjecting property to taxation while the term "domicile" is used in the chapter dealing with resolution of disputes among contending states.

In various contexts distinctions have been drawn between the two terms. In the present case, however, the taxing statute simply requires that the decedent be a resident of the state at the time of death in order for his or her property to be subject to inheritance tax. In our opinion it was the intention of the General Assembly to extend its taxing power to situations such as this, where a deceased person has resided in the state for a number of years and where the primary administration of his or her estate occurs here.

In many respects the present case is similar to that of *Sparks v. Sparks*, 114 Tenn. 666, 88 S.W. 173 (1905) in which the complainant in a divorce case had not resided in Tennessee for more than twenty-two years. He had been born and reared in the state but had taken a position with the Treasury Department in the District of Columbia. He lived there from 1882 until 1904. He returned to Tennessee on several occasions and continued to vote in Tennessee, to pay poll tax in the state from time to time and to maintain church membership in the state. He testified that it was always his intention to return to Tennessee in the event he should lose his position in the Treasury Department. This Court affirmed a holding of the trial court that the individual had lost his residence, domicile and citizenship in Tennessee.

With respect to the intent to return, the Court said:

The intention, however, to return to the domicile of nativity, or one acquired, must be fixed, absolute, and unconditional. A mere floating intention to return at some future period or upon the happening of some uncertain event is not sufficient. The intent to return must not depend upon inclination or be controlled by future events. 114 Tenn. at 669, 88 S.W. at 174.

In the case of *Coury v. State, ex rel. Webster*, 213 Tenn. 454, 460, 374 S.W.2d 397, 399–400 (1964) the Court quoted with approval the following statement:

Domicile is presumed to follow residence; in other words, the place of residence, where a person actually lives, is presumed to be, or is *prima facie* his domicile, and the rule applies not only in interstate habitation, but also where a citizen removes to a foreign country. An actual residence is merely one circumstance, the presumption raised thereby is not conclusive, but is rebuttable; and the burden of proof to rebut this presumption is on the person contending to the contrary.

■ In our opinion the executrix has not overcome the presumption that decedent

was domiciled in Tennessee and was a resident here for purposes of inheritance taxation. We fail to see how she could be considered to be a "non-resident" when she had resided here for twelve years and had all of her tangible personal property situated here as well as most of her intangible property. It is true that she retained some ties to the state of Florida, including the maintenance of her voting registration there and the continuation of a Florida driver's license. Even the latter, however, showed Nashville, Tennessee, as her place of residence.

In our opinion the executrix did not establish by a preponderance of the evidence that the decedent was domiciled elsewhere or that she had her place of residence outside of Tennessee at the time of her death.

The judgment of the trial court is affirmed at the cost of appellant. The cause will be remanded to that court for collection of costs accrued there and for any further proceedings which may be necessary.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.