# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

November 13, 1998

Cecil W. Crowson
Appellate Court Clerk

LARRY ROGER BARNETT,     )
                              )
    Plaintiff/Appellee,     )
                              )
                              )   Bedford Chancery
VS.                           )   No. 19,848
                              )
                              )   Appeal No.
SUSAN MARIE BARNETT,     )   01A01-9605-CH-00228
                              )
    Defendant/Appellant.     )

## APPEAL FROM THE CHANCERY COURT FOR BEDFORD COUNTY
### AT SHELBYVILLE, TENNESSEE

### THE HONORABLE TYRUS H. COBB, CHANCELLOR

For Plaintiff/Appellee:

Rondal Thomas Wilson
Patricia Diane Cook
Shelbyville, Tennessee

For Defendant/Appellant:

Michael E. Giffin
Robertson Worsham Gregory & Giffin
Tullahoma, Tennessee

## AFFIRMED IN PART; VACATED IN PART;
## AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves two parents' interstate competition for the custody of their children. The husband filed a divorce complaint in the Chancery Court for Bedford County two days after the wife commenced proceedings for separate maintenance and child support in Florida. Following a bench trial, the Tennessee court granted the husband a divorce and awarded him sole custody of the parties' three children. On this appeal, the wife asserts that the Tennessee court did not have jurisdiction over the husband's divorce complaint and that the trial court should not have exercised jurisdiction over the child custody and visitation issues. While we find that the trial court had jurisdiction over the custody issues in this case, we have determined that the trial court should not have exercised its jurisdiction and should have deferred to the Florida court where the wife's petition for separate maintenance was pending. Accordingly, we vacate the custody determination.

## I.

Susan Marie Barnett and Larry Roger Barnett met while they were students at the University of Tennessee and were married in June 1978 in Clearwater, Florida. Dr. Barnett had recently earned his doctorate degree in electrical engineering, and Ms. Barnett had earned a master's degree in agricultural extension. Soon after their wedding, the parties moved to northern Virginia where Dr. Barnett had accepted employment with the Naval Research Laboratory. Between 1983 and 1988, the parties had three children, two daughters and a son.

The parties moved to Salt Lake City in 1983 when Dr. Barnett accepted an assistant research professorship at the University of Utah. Four years later, they moved to Westminster, Colorado, and in 1988, they purchased a home in Bailey, Colorado. Dr. Barnett continued working at the University of Utah but also began consulting with the National Aeronautics and Space Administration in Cleveland, Ohio and with the Tsing Hua University in Taiwan. One of Dr. Barnett's consulting projects involved the fabrication of high power microwave equipment for a Taiwanese company. Because Dr. Barnett's father's business in Bedford County was

building the equipment, Dr. Barnett began to spend significant amounts of time in Tennessee. From February 1991 through July 1994, Dr. Barnett would spend several weeks in Tennessee interspersed with several weeks in Colorado.

The lengthy periods of separation caused the parties' marriage to suffer. Their relationship eventually settled into a recurring pattern of irritable disagreement and open argument. Dr. Barnett attempted to alleviate the problem by suggesting that Ms. Barnett and the children move to Tennessee. Ms. Barnett adamantly refused to move to Tennessee because she did not care for Mr. Barnett's family and did not wish to live near them. The parties' differences continued to worsen.

Dr. Barnett's lengthy stays in Tennessee gave the parties less and less reason to continue living in Colorado. Since Ms. Barnett's family lived in Florida, Ms. Barnett eventually suggested that the family move to Florida. The parties sold their home in Colorado in November 1994, and Ms. Barnett traveled to Clearwater, Florida with the expectation that Dr. Barnett and the children would join her after the closing. However, instead of traveling to Florida following the closing on December 14, 1994, Dr. Barnett and the children went to his parents' home in Bedford County. It was only after arriving in Bedford County that Dr. Barnett informed Ms. Barnett that he and the children would not be coming to Florida. This news upset Ms. Barnett, and she informed Dr. Barnett that she was coming to Tennessee immediately to pick up the children.

Ms. Barnett and her sister arrived at Dr. Barnett's parents' home in Bedford County on December 19, 1994. When Dr. Barnett's father stopped Ms. Barnett from entering the house, Ms. Barnett demanded that the children be brought out of the house so she could see them. The children were ushered outside without shoes and coats, and Ms. Barnett directed them to get into her automobile without any of their clothes or other belongings because she was taking them back to Florida with her. After Dr. Barnett refused to accompany his wife and children to Florida, Ms. Barnett departed with the children, leaving Dr. Barnett behind at his parents' house.

One week later, Dr. Barnett traveled to Florida to visit his children for Christmas and to talk with Ms. Barnett. Ms. Barnett and the children were living with

Ms. Barnett's parents in Clearwater. He returned to Clearwater in January 1995 with the children's belongings and school records. When the parties were unable to reconcile, Dr. Barnett returned to Tennessee on February 2, 1995.

On March 8, 1995, Ms. Barnett filed a petition seeking separate maintenance and child support in the Circuit Court for Pinellas County, Florida. In her petition, Ms. Barnett requested the Florida court to order Dr. Barnett to pay her support during the separation and to approve their agreement regarding the temporary custody of their children. Two days later, Dr. Barnett filed a complaint for divorce in the Chancery Court for Bedford County seeking an equitable division of the marital property and custody of the parties' children. Ms. Barnett later amended her petition after Dr. Barnett declined to sign the draft custody and support agreement.

The legal maneuvering began in earnest once the competing proceedings in Florida and Tennessee got under way. On March 30, 1995, Ms. Barnett obtained an ex parte injunction from the Florida court preventing Dr. Barnett and his parents from removing the children from her custody. Armed with this injunction, reciting that the Florida court had taken jurisdiction over the subject matter and the parties, Ms. Barnett moved to dismiss Dr. Barnett's Tennessee divorce action because he did not satisfy the statutory residency requirement and because Tennessee was not the children's home state. The trial court denied Ms. Barnett's motion in April 1995, and in June 1995 denied her motions to amend its April 1995 order and for summary judgment.

The trial court heard the evidence in November 1995, and on December 8, 1995, entered a final judgment granting Dr. Barnett a divorce on the ground of inappropriate conduct. Based on its concern about Ms. Barnett's "emotional stability," the trial court awarded Dr. Barnett custody of the parties' three children and directed that the physical change of custody take place on December 26, 1995. The trial court also provided Ms. Barnett with defined visitation and relieved her from paying child support because she was unable to do so. Ms. Barnett has appealed from this decision.

## II.

Ms. Barnett first asserts that the trial court lacked subject matter jurisdiction to grant Dr. Barnett a divorce because he was not a bona fide resident of Tennessee when he first filed his divorce complaint as required by Tenn. Code Ann. § 36-4-104(a) (1996). On April 28, 1995, the trial court denied Ms. Barnett's motion to dismiss based on this ground after concluding that Dr. Barnett was a resident of Tennessee when he filed the complaint and that the conduct on which Dr. Barnett's divorce complaint was based occurred in Bedford County. The evidence does not preponderate against these findings.

## A.

The substantive law governing divorce in this state is purely statutory. *See Chastain v. Chastain*, 559 S.W.2d 933, 934 (Tenn. 1977); *Carter v. Carter*, 28 Tenn. App. 478, 480, 191 S.W.2d 451, 452 (1944). Thus, a trial court's subject matter jurisdiction over a particular divorce action must be based upon the applicable divorce statutes. *See Turner v. Bell*, 198 Tenn. 232, 248, 279 S.W.2d 71, 78 (1955). Tenn. Code Ann. § 36-4-104(a) provides that, "a divorce may be granted . . . if the acts complained of were committed while the plaintiff was a bona fide resident of this state . . ..".[1] This statute makes Tennessee residency by the party seeking divorce a condition precedent to granting a divorce. *See Carter v. Carter*, 113 Tenn. 509, 512, 82 S.W. 309, 309 (1904).

The residency requirement in Tenn. Code Ann. § 36-4-104(a) is intended to assure that Tennessee has a sufficient relationship with the parties and their marriage to make it reasonable for the courts of this state to affect the parties' martial status. *See Wiseman v. Wiseman*, 216 Tenn. 702, 706-07, 393 S.W.2d 892, 894 (1965). Hence, the residency requirement constitutes one of the elements making up a Tennessee court's jurisdiction over any asserted divorce complaint. *See Tyborowski v. Tyborowski*, 28 Tenn. App. 583, 585, 192 S.W.2d 231, 232 (1945).

As used in Tenn. Code Ann. § 36-4-104(a), the term "residence" means domicile. *See Wiseman v. Wiseman*, 216 Tenn. at 711, 393 S.W.2d at 896; *Brown v.*

---

[1] The act of marital misconduct upon which the divorce was granted was Ms. Barnett's snatching of the children from Dr. Barnett's parents' Bedford County home on December 19, 1994. That finding of marital misconduct is not at issue in this appeal.

*Brown*, 150 Tenn. 89, 91, 261 S.W. 959, 959 (1924). Our courts have described domicile as:

> The place where a person has his principal home and place of enjoyment of his fortunes; which he does not expect to leave, except for a purpose; from which when absent, he seems to himself a wayfarer; to which when he returns, he ceases to travel.

*Snodgrass v. Snodgrass*, 49 Tenn. App. 607, 611, 357 S.W.2d 829, 831 (1961). To create domicile in Tennessee, a person ordinarily must not only intend to establish a personal home in this state but must also act consistently with this intention. *See Greene v. Greene*, 43 Tenn. App. 411, 429, 309 S.W.2d 403, 411 (1957). To acquire domicile here, the person must also have no present intention or expectation of changing his or her residence to some other state. *See Tate v. Collins*, 622 F. Supp. 1409, 1412 (W.D. Tenn. 1985).

Except when a person's domicile is fixed as a matter of law, *see*, *e.g.*, Tenn. Code Ann. § 67-8-504 (1998) (determining a decedent's domicile for inheritance tax purposes); Restatement (Second) Conflict of Laws § 14(2) (1971) (determining the birth domicile of children), the person claiming domicile in a particular state must establish his or her claim by a preponderance of the evidence. *See Hofferbert v. City of Knoxville*, 470 F. Supp. 1001, 1002 (E.D. Tenn. 1979). Where domicile has been contested and proved, our review of the trial court's determination is de novo upon the record with a presumption that the trial court was correct, unless the evidence otherwise preponderates. Tenn. R. App. P. 13(d); *see also Bernardi v. Bernardi*, 42 Tenn. App. 282, 291, 302 S.W.2d 63, 68 (1956). In reviewing such questions, we consider not only a person's declarations and conduct but also all other relevant facts and circumstances. *See Wiseman v. Wiseman*, 216 Tenn. at 708, 393 S.W.2d at 895.

## B.

Ms. Barnett insists that Dr. Barnett's domicile could only have been either Colorado or Florida when he filed his divorce complaint in December 1994. To support her claim that Colorado was Dr. Barnett's domicile, Ms. Barnett points to all the parties' contacts with Colorado between 1988 and December 1994. To support her claim that Florida was Dr. Barnett's domicile, she points out that Dr. Barnett

came to her parents' Florida home in December 1994 and in January 1995 to help her enroll the children in school and to look for suitable housing there. We find both of these arguments unpersuasive.

The preponderance of the evidence at trial showed that Dr. Barnett intended to establish his home in Tennessee when he left Colorado and that his actions were consistent with his intentions. He informed his parents as early as the spring of 1994 that he planned to move to Tennessee. He also sold his home in Colorado, concluded his business there, and moved his personal items to Tennessee. Dr. Barnett basically concentrated his whole livelihood, his only means of support for himself and his family, in Tennessee. He also acquired a Tennessee driver's license and pilot's license.

Dr. Barnett's two subsequent short trips to Florida to visit Ms. Barnett and their children lack convincing earmarks of any change of domicile. Dr. Barnett never moved his personal property or the location of his consulting business to Florida. The December 1994 trip was little more than a Christmas visit with his children, and the month-long visit in January 1995 seems to have been mainly an attempt to reconcile and work out marital differences with Ms. Barnett. When these efforts proved fruitless, Dr. Barnett promptly returned to Tennessee.

On December 19, 1994, when the acts constituting the grounds for his request for divorce occurred, Dr. Barnett was living with his parents in Bedford County. His work was in Bedford County, and he had no other home at the time. By that time, he had abandoned his Colorado domicile and had not taken any acts whatsoever to establish a domicile anywhere other than in Tennessee. The place where a person lives is presumed to be the person's domicile. *See Hussey v. Jackson*, 766 S.W.2d 184, 187 (Tenn. 1989); *Hines v. Hines*, 220 Tenn. 437, 441, 418 S.W.2d 253, 255 (1965). Based on the record, we cannot say that the evidence preponderates against the trial court's finding that Dr. Barnett was a bona fide resident of Tennessee when he filed for divorce and, therefore, that Dr. Barnett met the residency requirement of Tenn. Code Ann. § 36-4-104(a).

### III.

Ms. Barnett also asserts that the trial court did not have jurisdiction to make a decision regarding the custody of the parties' children. She asserts that the trial court erred by determining that Tennessee was the children's home state when Dr. Barnett filed his divorce complaint. While we agree that Tennessee was not the children's home state in March 1995, we have determined that the trial court could properly have concluded that Tennessee has a significant connection with the children and with Dr. Barnett to warrant asserting jurisdiction over the custody and visitation issues under Tenn. Code Ann. § 36-6-203(a)(2) (1996).[2]

## A.

Tennessee courts are empowered to make initial child custody determinations when Tennessee is the affected child's home state. *See* Tenn. Code Ann. § 36-6-203(a)(1)(A). For the purpose of the statute, the "home state" is the state in which the "child immediately preceding the time involved lived with such child's parents, a parent or a person acting as a parent, for at least six (6) consecutive months." Tenn. Code Ann. § 36-6-202(5) (1996). Inexplicably, the trial court in this case found that Tennessee was the children's home state even though they had been in Tennessee for only five days in December 1994 before Ms. Barnett took them to Florida. No interpretation of the facts can support a conclusion that Tennessee was the home state of these children when Dr. Barnett filed for divorce.

However, Tennessee courts may acquire jurisdiction to decide child custody and visitation questions when Tennessee is not the affected child's home state. Tenn. Code Ann. § 36-6-203(a)(2) provides an alternative means for acquiring jurisdiction if the following four requirements are satisfied:

(A)    No state qualifies as the child's home state, or all states qualifying as the child's home state decline to exercise jurisdiction because Tennessee is a more appropriate forum for deciding custody issues;

(B)    The child and at least one of the parents have a significant connection with Tennessee;

---

[2]This court may affirm a trial court's decision that reaches the correct result, irrespective of the trial court's reasons. *See Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Kaylor v. Bradley*, 912 S.W.2d 728, 735 n.6 (Tenn. Ct. App. 1995); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

(C)    Substantial evidence concerning the child's present or future care, protection, training, and personal relationships is available in Tennessee; and

(D)    It is in the child's best interests for a Tennessee court to assume jurisdiction over the custody issue.

We have determined that the facts in the record satisfy each of these requirements.

## B.

The laws of both Florida and Tennessee require that a child live with a parent in the state for at least six months before the state could be considered the child's home state.[3] The parties' children had not lived in either Tennessee or Florida for six months before Ms. Barnett filed her action for separate maintenance or before Dr. Barnett filed his divorce complaint. Accordingly, for the purpose of Tenn. Code Ann. § 36-6-203(a)(1)(A), neither Florida nor Tennessee qualified as the children's home state.

The evidence likewise supports the second jurisdictional prerequisite – that the children and at least one of the parents have a "significant connection" with Tennessee. Making this determination does not require the court to compare the significance of the child's contacts with the competing possible forums. *See Cullen v. Prescott*, 394 S.E.2d 722, 725 (S.C. Ct. App. 1990). Rather, it requires the court to focus on the kind and quality of the links between the child, the parent, and the particular forum where the court sits. Dr. Barnett has significant connections to Tennessee. His present and prospective livelihood is here. He grew up here, was educated here, and his extended family lives here.

The connection between the children and Tennessee presents a closer question. The children spent the most significant part of their lives in Colorado, although they visited Dr. Barnett's family in Tennessee on occasion. Until December 1994, the children's most significant connection was with Colorado. However, both their parents have abandoned Colorado, and the children's connections with Colorado have effectively been severed. In this circumstance, the court cannot dwell on the

---

[3]*See* Fla. Stat. Ann. § 61.1306(5) (West 1997); Tenn. Code Ann. § 36-6-202(5).

significance of the links the children have with Colorado but rather must focus on the links between the children and Tennessee.

Tennessee has significant links with the parties' children and with Dr. Barnett. In addition, substantial evidence concerning the children's best interests can be found here. Dr. Barnett was raised and educated here and has decided to reside here. His extended family lives here. The children have a home in Tennessee close to a large group of their relatives whom Dr. Barnett can look to for help and support with his parental responsibilities. Accordingly, we find that the evidence in the record satisfies the conditions in Tenn. Code Ann. § 36-6-203(a)(2)(B), (C), & (D) and that the trial court could have exercised jurisdiction to adjudicate the custody of the parties' children under Tenn. Code Ann. § 36-6-203(a)(2).

## IV.

Ms. Barnett also asserts that the trial court should not have exercised its custody jurisdiction but rather should have deferred to the Florida court where her earlier petition for separate maintenance was pending. The resolution of this issue requires consideration of both Tennessee's version of the Uniform Child Custody Jurisdiction Act and the federal Parental Kidnaping Prevention Act. Because the Florida court was the first to exercise its custody jurisdiction, we have determined that the trial court erred by addressing the custody issues rather than deferring to the Florida court.

## A.

The Uniform Child Custody Jurisdiction Act was enacted to "avoid jurisdictional competition and conflict with courts of other states in matters of child custody." Tenn. Code Ann. § 36-6-201(a)(1) (1996). It accomplishes its purpose by establishing a set of objective rules for determining which court should resolve an

interstate custody dispute.  One of these rules is the "first-in-time" rule in Tenn. Code Ann. § 36-6-207(a) (1996) which provides:

> A court of this state shall not exercise its jurisdiction under this part if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

This rule is drawn verbatim from the Uniform Child Custody Jurisdiction Act.  *See* Uniform Child Custody Jurisdiction Act § 6, 9 U.L.A. 219 (1988).

Tenn. Code Ann. § 36-6-207(a) plainly directs trial courts to refrain from exercising their jurisdiction if another custody proceeding, in substantial conformity with the Uniform Child Custody Jurisdiction Act, is pending in another state when the action in this state is filed.  Thus, under this provision, the mere fact that a custody suit has been filed in another state is sufficient to require the trial courts in this state to stay their hand.

However, Tenn. Code Ann. § 36-6-207(a) is not the only statute addressing jurisdiction in interstate custody disputes.  The federal Parental Kidnaping Prevention Act provides:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C.A. § 1738A(g) (West 1994).  Under this section, the mere unilateral filing of a custody complaint in another state is not enough to prevent a court in another state from exercising its custody jurisdiction.  *See Wambold v. Wambold*, 651 A.2d 330, 333 (Me. 1994).  Courts, however, must decline to exercise their custody jurisdiction when the court of another state has issued some order indicating that it has assumed jurisdiction over the custody matter. *See Braden v. Braden*, 551 N.W.2d 467, 470 (Mich. Ct. App. 1996); *Hobbs v. Hobbs*, 508 So. 2d 677, 680 (Miss. 1987); *In re Marriage of Kastana's*, 896 P.2d 726, 730 (Wash. Ct. App. 1995).

The Parental Kidnaping Prevention Act preempts inconsistent provisions of a state's version of the Uniform Child Custody Jurisdiction Act. *See Wilcox v. Wilcox*, 862 S.W.2d 533, 544 (Tenn. Ct. App. 1993). Accordingly, when the courts of this state find themselves involved with an interstate custody dispute that is also pending in the court of another state, they should not proceed to adjudicate custody issues until determining:

(1) Whether the proceeding pending in the other state is substantially in conformity with the Uniform Child Custody Jurisdiction Act and

(2) Whether the court in the other state has already issued an order indicating that it has assumed jurisdiction over the custody matter.

If the answer to both questions is "yes," the court should defer to the other court unless, following consultation, the two courts decide that it would be in the children's best interests to proceed in Tennessee. The lawyers for the parties are obliged to inform the trial court if custody proceedings are pending in another state. However, trial courts also have a statutory obligation to consult with their counterparts in other states in order to avoid issuing competing and inconsistent custody orders. *See* Tenn. Code Ann. § 36-6-207(b), (c).

## B.

This case illustrates an almost complete breakdown of the orderly process envisioned by the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act. On March 8, 1995, Ms. Barnett filed a petition for separate maintenance in the Circuit Court for Pinellas County, Florida requesting, among other things, that the parties' temporary custody and support agreement be incorporated into a final judgment for separate maintenance. Two days later, Dr. Barnett filed his complaint for divorce in the Chancery Court for Bedford County. On March 31, 1995, Ms. Barnett moved to amend her petition for separate maintenance to request custody of the parties' children and child support because Dr. Barnett had declined to sign the temporary custody and support agreement referred to in her initial petition.

On April 3, 1995, Ms. Barnett requested the Florida court to issue a temporary injunction preventing Dr. Barnett and his relatives from removing the parties' children from her custody. Ms. Barnett's motion informed the Florida court that Dr. Barnett had filed a petition for divorce in Tennessee and that she was "in great fear that . . . [he] will attempt to come to Florida and take the children back to Tennessee." The Florida court entered a temporary injunction, ex parte, on April 3, 1995, enjoining Dr. Barnett and his family from removing the parties' three children from Ms. Barnett's custody.

Two days after obtaining the temporary injunction in Florida, Ms. Barnett moved the Tennessee court to dismiss Dr. Barnett's complaint on two grounds – one of which was the pending separate maintenance proceeding in Florida. To substantiate her claim, she provided the Tennessee court with a copy of the Florida court's April 3, 1995 order. Dr. Barnett responded on April 19, 1995, by filing his own motion to dismiss in the Florida court.

On April 28, 1995, the Tennessee court entered an order denying Ms. Barnett's motion to dismiss after concluding "that this suit is not barred by the prior suit pending in Florida because there is no suit filed in Florida for a divorce or custody of the children, but only an action for separate maintenance." On May 15, 1995, Dr. Barnett filed an amended motion to dismiss in the Florida court relying on the Tennessee court's April 28, 1995 order. Predicably, the Tennessee court entered an order on June 8, 1995 denying Ms. Barnett's motion to alter or amend, and the Florida court entered an order on August 2, 1995 denying Dr. Barnett's motion to dismiss.[4] This is how matters stood when this case was tried in Tennessee on November 29, 1995 and when the final judgment was entered on December 8, 1995.

## C.

Based on these facts, we must first determine whether Ms. Barnett's separate maintenance proceeding in Florida was a custody proceeding that was in substantial

---

[4]The Florida court denied Dr. Barnett's motion to reconsider its August 2, 1995 order, and on September 28, 1995, directed Dr. Barnett's present and future employers to withhold $2,985 per month from his compensation for "domestic support payments." On October 18, 1995, the Florida District Court of Appeals declined to review the Florida court's decisions in the parties' case.

conformity with the Uniform Child Custody Jurisdiction Act. The Tennessee court concluded in its April 28, 1995 order that it was not. Regrettably, this conclusion is factually and legally incorrect.

Under Fla. Stat. Ann. § 61.09 (West 1997), a wife may seek separate maintenance for both herself and children of the marriage without seeking any determination of custody. The Florida courts have held that the Uniform Child Custody Jurisdiction Act has no application in these cases. *See Howell v. Howell*, 545 So. 2d 933, 934 (Fla. Dist. Ct. App. 1989). However, Ms. Barnett's amended petition in the Florida court requested both custody and support. Accordingly, her action in Florida easily fits within the definition of "custody proceeding" under both Tenn. Code Ann. § 36-6-202(3) and Fla. Stat. Ann. § 61.1306(3) (West 1997).

Having determined that the Florida proceeding was a "custody proceeding" for the purposes of the Uniform Child Custody Jurisdiction Act, we must determine whether the proceeding was in substantial conformity with the Uniform Child Custody Jurisdiction Act and whether the Florida court was the first to issue an order indicating that it had assumed jurisdiction over the child custody issue. Because the parties' children had no home state in March 1995 but were residing with their mother in Florida at the time, we find that the Florida court could properly exercise "significant connection" jurisdiction over the children.[5] We also find that the Florida court's April 3, 1995 order enjoining Dr. Barnett and his family from removing the children from Ms. Barnett's custody provided a clear indication that the Florida court intended to exercise jurisdiction over the custody issue.

Based on these facts, the Tennessee court erred by exercising its custody jurisdiction in this case. Ms. Barnett filed her petition seeking separate maintenance and custody first, and the Florida court was the first court to enter a presumptively appropriate order indicating that it intended to exercise jurisdiction over the issue of custody. Faced with these circumstances, the Tennessee court should have stayed its hand unless the Florida court later stayed its proceedings in deference to the proceedings in Tennessee.

---

[5]The Florida court concluded in its August 2, 1995 order that the "parties including the Respondent have had substantial contact with Florida."

We now turn to the remedy for a trial court's failure to adhere to the Uniform Child Custody Jurisdiction Act or the Parental Kidnaping Prevention Act. Neither Act prescribes a remedy when states fail to follow the law. *See Brown v. Brown*, 847 S.W.2d at 509. However, an explicit remedy is not needed. State courts are responsible for enforcing both the Parental Kidnaping Prevention Act and their state's version of the Uniform Child Custody Jurisdiction Act. They must abstain from exercising jurisdiction when the Acts require them to. Any other rule would undermine the salutary purpose of the Acts. Thus, when a state court discovers that a court in another state has asserted jurisdiction over custody issues, it should dismiss its custody proceeding, *see Cunningham v. Cunningham*, 719 S.W.2d 224, 228 (Tex. App. 1986), and it should vacate any custody orders it has already issued. *See Grun v. Grun*, 496 A.2d 1183, 1186 (Pa. Super. Ct. 1985). Accordingly, the appropriate remedy in this case is to vacate the portions of the trial court's December 8, 1995 order relating to the custody and support of the parties children and remand the case to the trial court for further proceedings consistent with the Parental Kidnaping Prevention Act and Tenn. Code Ann. § 36-6-207.

## V.

As a final matter, we address Dr. Barnett's criticism of the Florida court's failure to consult with the Tennessee court upon being informed that a custody proceeding was pending in Tennessee. We find the focus of this criticism somewhat selective because there is no indication in this record that the Tennessee court attempted to consult with its counterpart in Florida when it learned of the pending Florida custody proceedings. When two courts learn that a custody proceeding is pending in another jurisdiction, the Uniform Child Custody Jurisdiction Act envisions that the courts will jointly evaluate the matter and that the court with the least interest or connection with the children will decline to exercise jurisdiction and defer to the other court. *See In re T.R.W.*, 536 N.E.2d 74, 76 (Ill. App. Ct. 1989).

We are disinclined to undercut the intent of the Parental Kidnaping Prevention Act and the Uniform Child Custody Jurisdiction Act by establishing a precedent that their requirements can be ignored where one or both courts decline to follow them. As far as we can tell, both trial courts shirked their responsibility in this case.

Because our appellate oversight does not reach to Florida, we must limit our review to the actions of the Tennessee court. The fact that the Florida court did not contact the Tennessee court provides no justification for the Tennessee court's failure to contact the Florida court and did not empower the Tennessee court to make a custody determination in contravention of the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act.

The goal of the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act is to promote the interests of children by fostering interstate cooperation between courts. *See Stock v. Stock*, 677 So. 2d 1341, 1345-49 (Fla. Dist. Ct. App. 1996). Hopefully meaningful cooperation can still occur, even at this stage of the proceeding. To paraphrase the Tennessee Supreme Court, we trust that when requested to cooperate under the auspices of the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act, that the courts of Florida will respond affirmatively, just as we trust the courts of Tennessee would do in a similar situation. *See Brown v. Brown*, 847 S.W.2d at 506.

## VI.

We vacate the portions of the trial court's December 8, 1995 judgment relating to child custody and support and remand the case for further proceedings consistent with Tenn. Code Ann. § 36-6-207 and the Parental Kidnaping Prevention Act. We also tax the costs of this appeal to Larry Roger Barnett for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____

BEN H. CANTRELL, JUDGE