IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 3, 2018

## IN RE ESTATE OF LOUIS DELL'AQUILA

**Appeal from the Probate Court for Davidson County**
**No. 17P1725      David Randall Kennedy, Judge**

_____

### No. M2018-01090-COA-R3-CV

_____

The dispositive issue on appeal is whether the Probate Court of Davidson County, Tennessee has subject matter jurisdiction over the decedent's estate. The decedent resided in Pennsylvania most of his life. Three weeks before his death, the decedent moved into an assisted living facility in Nashville, Tennessee to be near one of his sons. Shortly following his death, the son who was nominated to be the executor filed a Petition for Letters Testamentary in Davidson County Probate Court. The decedent's daughter from Pennsylvania contested the court's jurisdiction, arguing the decedent was domiciled in Pennsylvania at the time of death. Following a four-day evidentiary hearing on the issue of domicile, the probate court determined the decedent was domiciled in Tennessee and admitted the will to probate. Because the evidence preponderates in favor of the trial court's determination that the decedent was domiciled in Tennessee, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO JR., J., joined.

Ronald K. Nevin, Nashville, Tennessee and Daniel A. Seibel, Pittsburg, Pennsylvania, for the appellant, Lillian Cannon.

Paul A. Gontarek, Nashville, Tennessee and Elliott J. Schuchardt, Knoxville, Tennessee for the appellee, David Dell'Aquila, Administrator of the Estate of Louis Dell'Aquila.

### OPINION

Louis Dell'Aquila ("Decedent"), who was 86 years old at the time of his death on October 3, 2017, practiced law in Pennsylvania for many years. At all relevant times prior to moving to Holy Family Manor, a senior care facility located in the Ross Township of Pennsylvania, Decedent and his wife, Kathleen ("Decedent's wife"), lived

in their marital residence located at 220 Camp Meeting Road, in Sewickley Heights, Pennsylvania. They had one adult child, Lillian Cannon ("Ms. Cannon"), who lived nearby.[1] Decedent had four additional children from a previous marriage, one of whom lived in Tennessee.[2]

The facts most relevant to this appeal occurred during the months prior to Decedent moving to Tennessee on September 10, 2017, and the three weeks thereafter. Decedent's wife had been diagnosed with Alzheimer's disease, and Decedent had a serious heart condition. In March 2017, Decedent learned from his physician that he had six months to a year to live.

As the health of Decedent's wife deteriorated, she was unable to properly care for him or herself. Moreover, Ms. Cannon suspected that Decedent was depressed, which caused him to be verbally abusive toward his wife. In June and July 2017, police responded to a number of calls at their residence, most of which were either related to domestic disputes between Decedent and his wife or incidents related to Decedent's heart condition. One of the calls involved a car accident in the driveway of their residence during which Decedent allegedly made some threatening statements to police officers. Based on Decedent's statements, Officer Amber Moore filed a "302 petition" requesting a court to involuntarily commit Decedent on the ground he was allegedly a danger to himself or others. As a consequence, Decedent was involuntarily committed to a psychiatric hospital on July 14, 2017, for evaluation.

While Decedent was involuntarily committed, Ms. Cannon placed Decedent's wife in Holy Family Manor, a senior care facility located in the Ross Township of Pennsylvania. On August 2, 2017, Decedent also moved into Holy Family Manor. Decedent's wife resided in the "memory care unit" for patients with dementia while Decedent was placed in the general population. Despite living in different units, Decedent saw his wife regularly; however, his visits were limited after staff observed Decedent being verbally abusive toward his wife. Because Decedent was unhappy with his treatment at Holy Family Manor, he called his son David Dell'Aquila and David's wife, Marita Dell'Aquila, who lived in Tennessee, and told them he wanted to move to Tennessee and bring his wife with him.

In preparation for the move and for his future care, Ms. Dell'Aquila found an appropriate care facility in the Nashville area. Additionally, Decedent signed a Healthcare Power of Attorney and a Financial Power of Attorney on August 24, 2017, giving David Dell'Aquila the authority to act on his behalf.

---

[1] They were married on April 24, 1976,

[2] Decedent's first wife died on May 5, 1975.

Shortly thereafter, Ms. Cannon learned that her half-brother David held Decedent's power of attorney, and that Decedent planned to move out of Holy Family Manor with his wife. Then, on August 30, 2017, Ms. Cannon filed a guardianship petition in Allegheny County, Pennsylvania Orphans' Court, to create a guardianship for Decedent's wife. The petition states:

An emergency exists in that David Dell'Aquila, a stepson of the alleged incapacitated person … who holds a power of attorney for his father, [Decedent], along with [Decedent], the incapacitated person's husband, are currently seeking to remove [Decedent's wife] from the safety of her residence at Holy Family Manor.

Upon being served with the petition, Decedent promptly retained Pennsylvania attorney, Michael Parrish, to oppose Ms. Cannon's petition. Mr. Parrish met with Decedent at Holy Family Manor on at least three occasions to discuss the petition and to discuss Decedent's desire to execute a new will. During the course of these meetings, Decedent told Mr. Parrish that he intended to move to Tennessee with his wife because his son, David, found a better care facility for them in Nashville. According to Mr. Parrish, at all times, Decedent appeared competent and capable of making his own decisions.

On September 6, 2017, Decedent executed a new will devising one-third of his estate to his wife and two-thirds to the Alzheimer's Foundation. The will also appointed his son David Dell'Aquila as the executor of his estate. Thereafter, Decedent began finalizing his plans to move to Tennessee, which included auctioning his personal property.

The following day, the Pennsylvania Orphans' Court granted Ms. Cannon "emergency plenary" guardianship over Decedent's wife. Additionally, and significantly, the court enjoined the sale of any assets in which Decedent's wife held a title interest or a marital interest, which included the contents of the residence on Camp Meeting Road. Consequently, Decedent could not sell his personal property; nor could his wife accompany him to Nashville without Ms. Cannon's permission. Nevertheless, Decedent remained undeterred.

On September 9, 2017, the day before Decedent moved to Nashville, Ms. Cannon visited Decedent at Holy Family Manor when and where they discussed his intention to move to Nashville and his desire to bring his wife with him. Ms. Cannon refused to allow Decedent's wife to accompany him to Nashville and tried to convince Decedent to remain in Pennsylvania. However, Ms. Cannon's efforts to keep Decedent in Pennsylvania were to no avail. In preparation for the move to Tennessee, David Dell'Aquila made arrangements for an ambulance to transport his father to Tennessee.

On September 10, 2017, the day of Decedent's move, Decedent's friend, Joseph O'Loughlin, met Decedent at Holy Family Manor. According to Mr. O'Loughlin, Decedent said he was happy to move to Nashville and felt it would be a better living situation than Holy Family Manor. Decedent also expressed his desire to have his wife eventually join him there. Then, Decedent got into the ambulance that transported him to the Brookdale Senior Care Facility in Nashville, Tennessee, where he remained until his death on October 3, 2017.

On October 5, David Dell'Aquila (hereinafter "Petitioner") filed a Petition for Letters Testamentary in Davidson County, Tennessee Probate Court. Shortly thereafter, Ms. Cannon contested the court's jurisdiction, arguing that Decedent was domiciled in Pennsylvania. Additionally, Ms. Cannon opened an estate case in Pennsylvania by filing a "caveat" with the Allegheny County, Pennsylvania Orphans' Court. During a hearing on November 9, 2017, the Pennsylvania court ruled that it would take no further action in Decedent's probate matter until the Davidson County Probate Court determined Decedent's domicile at the time of his death.

To that end, the Davidson County Probate Court held a four-day evidentiary hearing, which took place one day in November 2017 and three days in March 2018. After hearing the testimony of numerous witnesses, the court entered an order on April 6, 2018, which stated in pertinent part, "Decedent had capacity to make his own decisions and established his domicile in Tennessee when he relocated to this state on September 10, 2017." Accordingly, the court admitted Decedent's will to Probate in Common Form. Ms. Cannon then filed a Rule 59 Motion to Alter or Amend the Judgment, which the court denied on June 4, 2018.

Ms. Cannon appealed.

**ANALYSIS**

The dispositive issue on appeal is whether the Davidson County Probate Court has subject matter jurisdiction.

The question of whether a court has subject matter jurisdiction is a question of law, which we review de novo with no presumption of correctness. *Word v. Metro Air Servs., Inc.*, 377 S.W.3d 671, 674 (Tenn. 2012). A challenge to the court's subject matter jurisdiction calls into question the court's authority to adjudicate the controversy before it. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012). Subject matter jurisdiction can only be conferred by the constitution or a legislative act. *Id.* Therefore, when a party challenges a court's subject matter jurisdiction, the court must "identify the source of its power to adjudicate that type of controversy." *Word*, 377 S.W.3d at 674.

Here, Tennessee Code Annotated § 32-2-101 provides:

Wills shall be proved and recorded and letters testamentary granted in the probate court of the county where the testator had the testator's usual residence at the time of the testator's death, or, in case the testator had fixed places of residence in more than one county, in either or any of those counties.

In this instance, "residence" means domicile. *Hussey v. Jackson*, 766 S.W.2d 184, 186 (Tenn. 1989). Thus, "[i]f the testator was domiciled in Tennessee at the time of death, the will should be probated in this state." *Id.* Because domicile refers to a person's permanent home, an individual is limited to one domicile. *In re Conservatorship of Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct. App. 1995). Consequently, one "cannot acquire a new domicile…without first abandoning another." *Id.* A change of domicile requires a person to "(1) actually change his or her residence to a new place; (2) intend to abandon his or her old domicile; and (3) intend to establish a new domicile at the new residence." *Id.* However, verbal expression of intent, alone, is not sufficient to establish domicile. *Svoboda v. Svoboda*, 454 S.W.2d 722, 727 (Tenn. Ct. App. 1969). Rather, the verbal expression of intent must be coupled with some action "harmonizing with the intent." *Id.* (quoting *Brown v. Hows*, 42 S.W.2d 210, 212 (Tenn. 1931)).

Here, the trial court ruled that Decedent was domiciled in Tennessee without making any of the requisite factual findings. Generally, when a trial court fails to explain the factual basis for its decision pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure**,** the appropriate remedy is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015) (quoting *Lake v. Haynes,* No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). Nevertheless, "when faced with a trial court's failure to make specific findings," this court has previously held that "the appellate courts may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012) (internal citations omitted). In these instances, we are permitted to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015). After a careful review of the hearing testimony, we have concluded that the factual basis for the court's decision is "readily ascertainable." *Simpson*, 2012 WL 3675321, at *4. Accordingly, we will "soldier on." *Id.*

While it is undisputed that Decedent changed his residence from Pennsylvania to Tennessee, which meets the first element of the test, Ms. Cannon disputes the trial court's determination that Decedent intended to remain permanently in Tennessee. The testimony and exhibits in the record, however, provide overwhelming support for the court's determination.

Michael Parrish, Decedent's attorney; Lynda Johnson, Decedent's auctioneer; and Joseph O'Loughlin, Decedent's friend, all testified that Decedent was more than capable of making his own decisions. Significantly, each of these witnesses had direct contact and interaction with Decedent in the days leading up to his move to Tennessee; thus, their assessment of his state of mind is current and relevant. Further, each of them testified that Decedent told them he planned to move to Tennessee permanently.

Surprisingly, Ms. Cannon's testimony supports the finding that Decedent intended for his move to Tennessee to be permanent. The most relevant colloquy from her testimony reads:

Q. Did you discuss your father's move with your father on September 9th, during that last visit?

A. I did.

Q. What did your father say?

A. He said, "Mom wants to be with me." And I said, "Dad, the Court already decided this." And I said, "If you don't like this place, if it's not fancy enough, maybe [Petitioner] will pay for another place in Pittsburg where you can live fancier."

Q. What was your father's response?

A. He said, "No. No. This place is great. This place is great." Meaning the place that [Petitioner] had arranged for.

Q. You mean Brookdale down in Tennessee?

A. It must be great. It costs a lot more, about double.

Q. Did your father talk about trying to get your mom to move with him down to Brookdale?

A. He was saying to me, "She wants to be with me."

Q. So you asked your father then to stay in Pennsylvania?

A. I did.

Q. And then he basically said I'm going to go anyway?

A. Yes.

The foregoing testimony notwithstanding, Ms. Cannon argues that Decedent did not take action, other than the move itself, to abandon his former domicile. Ms. Cannon relies heavily on *Svoboda*, a case in which this court ruled that, while the decedent expressed a desire to change her domicile to Tennessee, the decedent was not domiciled here because she took no action to abandon her domicile in Kansas:

> The fact that Mrs. Svoboda had not sold but only stored her furniture, household goods, china and much of her clothing and had never made any effort to have it brought to Memphis is a strong circumstance that Mrs. Svoboda never decided as a finality that Memphis would be her home permanently even though she had told friends that she intended to make Memphis her home. The transfer of her domicile was not complete.

454 S.W.2d at 727.

Ms. Cannon argues that, like *Svoboda*, Decedent did not take any action to abandon his domicile in Pennsylvania, including having his wife accompany him to Tennessee, moving or selling his personal property, disposing of his real property, or changing his mailing address. We find Decedent's arguments to be unavailing and disingenuous.

Many of the witnesses, including Ms. Cannon, testified that Decedent wanted to bring his wife to Tennessee. Ms. Cannon also testified, however, that as her mother's guardian, she would not permit Decedent to do so. Therefore, Ms. Cannon's own testimony undermines her argument that because Decedent left his wife behind in Pennsylvania, he had no intent to abandon his former domicile.

As to the disposition of Decedent's property, Lynda Johnson, an auctioneer, testified that Decedent planned to auction his personal property in Pennsylvania, but Ms. Cannon obtained an injunction preventing Decedent from doing so. The court order, entered on September 7, 2017, by the Allegheny County, Pennsylvania Orphans' Court, appoints Ms. Cannon as the conservator for Decedent's wife and states:

> There shall be no sale or disposition by any person or entity of [Decedent's wife's] assets, real estate, and/or personalty including but not limited to property in which [Decedent's wife] holds a title interest or a marital interest (as defined by the Pennsylvania Divorce Code). This shall include the contents of [Decedent's wife's] marital home located at 220 Camp Meeting Rd., Sewickley, PA 14143.

Thus, it is disingenuous for Ms. Cannon to argue that because Decedent did not dispose of his personal property in Pennsylvania, Decedent did not intend to abandon his domicile there. In fact, in all of the Tennessee cases Ms. Cannon cites, which she claims are similar to the case sub judice, none of those cases involved a decedent who was under an injunction like the one here, much less an injunction that was obtained by the very party contesting the court's jurisdiction. *See Svoboda*, 454 S.W.2d; *see also Caldwell v. Shelton*, 221 S.W.2d 815 (Tenn. Ct. App. 1948); *see also In re Estate of Walls*, No. E2010-00758-COA-R3-CV, 2010 WL 4861428, at *1 (Tenn. Ct. App. Nov. 29, 2010).

It is not lost on this court that Ms. Cannon went to great lengths to prevent Decedent from changing his domicile to Tennessee, and now she seeks to benefit from that endeavor.[3] The evidence shows, however, that despite Ms. Cannon's efforts, Decedent was able to express through his words and his actions the requisite intent to reside permanently in Tennessee. As Ms. Cannon and others aptly described him, Decedent was a "stubborn" man.

Thus, considering the foregoing, we have determined that the preponderance of the evidence supports the trial court's determination that Decedent was domiciled in Tennessee when he died. Accordingly, the Davidson County Probate Court has subject matter jurisdiction.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Lillian Cannon.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[3] Also unavailing is Ms. Cannon's contention that Decedent was domiciled in Pennsylvania because the power of attorney he signed on August 24, 2017, states that he was domiciled in Pennsylvania, and the will Decedent executed on September 6, 2017, states the same. No one is arguing that Decedent was domiciled in Tennessee on August 24 when Decedent signed the power of attorney or on September 6 when Decedent executed his will. Decedent did not change his domicile until September 10, 2017, when he moved to Tennessee with the intent to remain permanently.